2019 IL App (1st) 153118

FIRST DISTRICT
SIXTH DIVISION
October 11, 2019

No. 1-15-3118

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | Nos. 92 CR 5333 & |
| | ) | 02 CR 6011 |
| | ) | |
| ELRON CATHEY, | ) | Honorable |
| | ) | Steven J. Goebel, |
| Defendant-Appellant. | ) | Judge Presiding. |

JUSTICE HARRIS delivered the judgment of the court, with opinion.
Justice Delort and Justice Connors concurred in the judgment and opinion.

**OPINION**

¶ 1    Defendant, Elron Cathey, appeals the order of the circuit court dismissing two petitions he filed for relief from his convictions for attempted first degree murder, aggravated battery with a firearm, and possession of a controlled substance. On appeal, defendant contends the court erred by dismissing his petition filed pursuant to section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2014)), where his convictions for attempted murder and aggravated battery with a firearm violate the one-act, one-crime rule. He also contends that his petition "in nature of writ of error coram nobis" sufficiently stated a claim that his possession conviction was based on planted drug evidence and that his guilty plea was obtained under threat of physical harm to him and his family. For the following reasons, we affirm the dismissal of defendant's *coram nobis* petition but reverse the dismissal of his section 2-1401 petition and remand for further proceedings.

¶ 2                                          JURISDICTION

¶ 3       The trial court dismissed both of defendant's petitions challenging his convictions on July 22, 2015. Defendant filed a motion for leave to file late notices of appeal in both cases, which this court allowed, assigning both petitions to case No. 1-15-3118. Accordingly, this court has jurisdiction pursuant to article VI, section 6, of the Illinois Constitution (Ill. Const. 1970, art. VI, § 6), and Illinois Supreme Court Rule 651(a) (eff. July 1, 2017), governing appeals in postconviction proceedings.

¶ 4                                      NO. 92-CR-05333

¶ 5                                      I. Background

¶ 6       Defendant was charged in the shooting of Orlando Derrick. At trial, Tyrone Thomas testified that on January 30, 1992, at approximately 10:45 p.m., he was in front of Tasha Mead's house talking to Derrick. He saw defendant coming from the gangway next to Mead's house, and he backed away when he noticed an expression on Derrick's face as if there was going to be a confrontation. He walked away and did not see a physical fight between defendant and Derrick. As he walked around a corner, Thomas heard a whistle and then two gunshots. Thomas came back, and defendant was gone. Derrick was lying facedown in the street. Thomas knocked on Mead's door, and when she appeared, he left. Thomas did not see Derrick with a gun that evening.

¶ 7       Derrick testified that on January 30, 1992, he went to Mead's house after she called and asked him to come. At approximately 11 p.m., after speaking with Mead for about five minutes, Derrick went outside to move his car. After parking his car, Derrick saw Thomas, and they walked together toward Mead's house. While they talked, Derrick saw defendant come out of the gangway. Defendant asked Derrick what he was doing there, and he responded that he did not

want to start any trouble. Derrick backed up, and defendant reached behind his back and pulled out a .22-caliber revolver. Derrick saw an unmarked police car, so he whistled. Defendant fired one shot, turned around, and fired two more shots before running away. Derrick was hit twice in the back as he turned away. When the police arrived, Derrick informed them that defendant shot him. Derrick stated that he was not carrying a gun that evening.

¶ 8     Mead testified that at approximately 11 p.m., on January 30, 1992, she called Derrick and asked him to come to her house. He arrived, stayed briefly, then left. Five to ten minutes after he left, Mead heard a whistle and then one gunshot. A couple seconds later, she heard two more gunshots. Thomas knocked on her door and pointed at Derrick, who was lying in the street.

¶ 9     The jury found defendant guilty of attempted first degree murder and aggravated battery with a firearm. He was sentenced to 20 years' imprisonment for both charges, to be served concurrently.

¶ 10    Defendant appealed his convictions, arguing that his counsel was ineffective and that the State violated his right to remain silent, his right to a fair trial, and his due process rights. Defendant further argued that the prosecutor's closing argument improperly shifted the burden of proof and that the trial court erred in limiting his impeachment of a witness. This court affirmed defendant's convictions in *People v. Cathey*, No. 1-93-2502 (1996) (unpublished order under Illinois Supreme Court Rule 23).

¶ 11    On October 11, 2013, defendant filed a *pro se* postconviction petition pursuant to the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq.* (West 2012)). The record does not contain defendant's petition or the trial court's order dismissing the petition. However, the trial court's order dismissing defendant's subsequent section 2-1401 petition, the dismissal in this appeal, stated that defendant alleged in his postconviction petition that his trial and appellate

counsel were ineffective and that his convictions violate the one-act, one-crime rule. The order also stated that the court dismissed defendant's postconviction petition on December 16, 2013, because he was no longer incarcerated on those convictions.

¶ 12    On June 12, 2015, defendant filed his *pro se* section 2-1401 petition alleging a one-act, one-crime violation. The State did not file a response. On July 22, 2015, the trial court *sua sponte* dismissed defendant's section 2-1401 petition. When the court dismissed the petition, it stated, "Let the record reflect, the State's Attorney is present." The trial court did not state for the record that defendant or a representative was also present. The court also did not orally state its reasons for dismissing the petition. In its written order, however, the trial court found that defendant's petition was untimely since it was filed more than 20 years beyond the limitations period. The court also found that defendant was not entitled to relief on his one-act, one-crime claim "because aggravated discharge of a firearm and attempt murder are separate convictions." Defendant appeals from this order.

¶ 13                                    II. Analysis

¶ 14    Section 2-1401 sets forth a procedure by which the trial court may vacate final orders and judgments more than 30 days after their entry. 735 ILCS 5/2-1401 (West 2014). Generally a civil remedy, the remedial powers of section 2-1401 also extend to criminal cases. *People v. Haynes*, 192 Ill. 2d 437, 460-61 (2000). The State argues that we should affirm the trial court's dismissal of defendant's petition because it was filed more than two years after entry of the order or judgment. See 735 ILCS 5/2-1401(c) (West 2014) (a section 2-1401 petition "must be filed not later than 2 years after the entry of the order or judgment"). We note, however, that the State did not file a response to the petition and the trial court did not hold a hearing before dismissing the petition. Therefore, the threshold issue we must address is whether the trial court had the

authority to dismiss defendant's section 2-1401 petition *sua sponte* because it was untimely filed where the timeliness issue was never raised by the parties.

¶ 15    It is well-established that when the State does not respond to a section 2-1401 petition, the trial court may *sua sponte* dismiss the petition. *People v. Vincent*, 226 Ill. 2d 1, 9-10 (2007). Our supreme court in *Vincent* reasoned that proceedings under section 2-1401 are subject to the usual rules of civil practice, and thus such petitions are "subject to dismissal for want of legal or factual sufficiency." *Id.* at 8. Furthermore, "responsive pleadings are no more required in section 2-1401 proceedings than they are in any other civil action." *Id.* at 9. As in civil proceedings on complaints, a respondent's failure to answer the section 2-1401 petition "constitutes an admission of all well-pleaded facts" and renders the petition ripe for adjudication on the pleadings alone. *Id.* at 9-10. Our supreme court equated judgment on the pleadings in this context with a dismissal for failure to state a cause of action. *Id.* at 14.

¶ 16    The trial court's dismissal here, however, based on the petition's untimeliness, was not a dismissal on the pleadings for failure to state a cause of action. Rather, timeliness under section 2-1401 is an affirmative defense that a responding party may waive or forfeit by failing to raise the issue below. See *People v. Pinkonsly*, 207 Ill. 2d 555, 562-63 (2003). In *Pinkonsly*, the issue before the court was whether the State could raise the timeliness of defendant's section 2-1401 petition for the first time on appeal. In making its determination, our supreme court looked at *People v. Wright*, 189 Ill. 2d 1 (1999), in which the court considered the issue under section 122-1 of the Act (725 ILCS 5/122-1 *et seq.* (West 1994)). The court noted that the section's limitations period allowed for exceptions if the late filing was not due to the defendant's culpable negligence. *Pinkonsly*, 207 Ill. 2d at 563-64. Although the defendant is required under the statute to allege facts demonstrating a lack of culpable negligence, the State is not permitted " 'to wait

until an appeal to raise an affirmative defense that the defendant may be able to avoid by amending his petition.' " *Id.* at 563 (quoting *Wright*, 189 Ill. 2d at 11). The court reasoned that by not raising this issue below, " 'the State has effectively precluded defendant from seeking to amend his petition to allege facts demonstrating that the late filing was not caused by his culpable negligence.' " *Id.* (quoting *Wright*, 189 Ill. 2d at 11).

¶ 17    Our supreme court noted that like section 122-1 of the Act, section 2-1401 of the Code also has an exception to its limitations period for delays attributable to disability, duress, or fraudulent concealment. See 735 ILCS 5/2-1401(c) (West 2014). The court concluded "that our statement in *Wright* applies with equal force" in the context of a section 2-1401 petition. *Pinkonsly*, 207 Ill. 2d at 564. It held that the State waived its timeliness argument because it should have raised the issue "before the trial court, where any amendments could have been made and any factual disputes could have been resolved." *Id.*

¶ 18    We find that pursuant to *Vincent* and *Pinkonsly*, the trial court cannot *sua sponte* dismiss a section 2-1401 petition based on untimeliness if that issue was never raised before the court. When the State does not answer a petition, its failure to respond constitutes an admission of all well-pleaded facts and that no triable issue of fact exists. *Vincent*, 226 Ill. 2d at 9-10. Thus, the trial court can *sua sponte* dismiss a section 2-1401 petition where the only issue before the court is whether defendant is entitled to relief as a matter of law. Application of the limitations period, however, requires a court to make fact determinations because exceptions are allowed for delays attributable to disability, duress, or fraudulent concealment. *Pinkonsly*, 207 Ill. 2d at 563-64; 735 ILCS 5/2-1401(c) (West 2014). Furthermore, where the State forfeits the timeliness defense by not answering the petition, defendant has no opportunity to amend his petition to allege facts

showing a potential factual dispute. In this context, dismissal of defendant's petition on the pleadings as a matter of law would be improper.

¶ 19    Here, defendant's petition was filed more than 20 years after judgment, well after the 2-year period set forth in section 2-1401. However, the State forfeited its affirmative defense of timeliness by not filing a response to the petition, and nothing in the record indicates that the State objected to the petition as untimely before the trial court. Defendant's petition does not acknowledge that it was untimely, nor does it set forth facts alleging why the limitations period should not apply. The record also does not show that the court orally informed the parties that it considered the timeliness issue or that the defendant was even before the court when it dismissed his petition. Since the issue was not raised by the parties below, defendant had no opportunity to avoid dismissal by amending his petition to allege supporting facts. *Pinkonsly*, 207 Ill. 2d at 563-64. The trial court's *sua sponte* dismissal of defendant's section 2-1401 petition, based on untimeliness, was improper.

¶ 20    The trial court also determined that defendant's petition should be dismissed because his convictions for both aggravated battery with a firearm and attempted murder did not violate the one-act, one-crime rule. Before reaching the merits, we address the State's argument that defendant's section 2-1401 petition was the wrong vehicle for alleging his one-act, one-crime claim because it is a purely legal issue. The State did not make this objection in the trial court, and the court proceeded to address the merits of defendant's petition. A party cannot complain of error to which that party consented. *In re Detention of Swope*, 213 Ill. 2d 210, 217 (2004). In any event, our supreme court in *People v. Thompson*, 2015 IL 118151, ¶ 44, recognized that section 2-1401 "permits either a legal or factual challenge to a final judgment."

¶ 21    The State further contends that *res judicata* and forfeiture preclude consideration of defendant's one-act, one-crime claim. The purpose of section 2-1401 is not to provide a general review of all trial errors or to substitute for direct appeal. *People v. Berland*, 74 Ill. 2d 286, 314 (1978). Therefore, points previously raised below or in other collateral proceedings cannot be the basis of a section 2-1401 petition. *Id.* at 314-15. *Res judicata*, however, is an equitable doctrine that "may be relaxed where justice requires." (Internal quotation marks omitted.) *People v. Kines*, 2015 IL App (2d) 140518, ¶ 21. Defendant previously raised the issue in his postconviction petition, which the trial court dismissed because he was no longer incarcerated. See *People v. Farias*, 187 Ill. App. 3d 879, 884 (1989) (finding that a defendant must actually be deprived of his liberty as a result of serving a sentence at the time he filed for postconviction relief). The trial court did not address the merits of this claim. Furthermore, since defendant has served his sentence, proceedings under the Act are no longer available to him to raise the one-act, one-crime issue. "[W]here fundamental fairness so requires, strict application of procedural bars may be relaxed." *People v. Flores*, 153 Ill. 2d 264, 274 (1992).

¶ 22    Defendant also could have raised this claim on direct appeal but did not, thus subjecting it to forfeiture in a collateral proceeding. *People v. Davis*, 2014 IL 115595, ¶ 13. However, our supreme court has determined that since one-act, one-crime violations affect the integrity of the judicial process, a reviewing court may consider the issue as plain error notwithstanding defendant's forfeiture. *People v. Harvey*, 211 Ill. 2d 368, 389 (2004). For these reasons, we proceed to the merits of defendant's claim that his petition sufficiently alleged a one-act, one-crime violation. Our standard of review is *de novo*. See *Vincent*, 226 Ill. 2d at 14.

¶ 23    Relief under section 2-1401 requires defendant to set forth specific factual allegations showing (1) the existence of a meritorious claim, (2) due diligence in presenting the claim to the

circuit court, and (3) due diligence in filing the section 2-1401 petition. *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986). Defendant contends a meritorious claim exists in that his convictions for attempted murder and aggravated battery with a firearm were based on the same physical act, the shooting of Derrick. Defendant "may not be convicted of multiple offenses when those offenses are all based on precisely the same physical act." *Harvey*, 211 Ill. 2d at 389. Prejudice results to the defendant where more than one offense is carved from the same physical act. *People v. King*, 66 Ill. 2d 551, 566 (1977). In a *King* analysis, courts first determine "whether the defendant's conduct consisted of a single physical act or separate acts." *Harvey*, 211 Ill. 2d at 389. An " '[a]ct' " means "any overt or outward manifestation which will support a different offense." *King*, 66 Ill. 2d at 566. We find *People v. Crespo*, 203 Ill. 2d 335 (2001), instructive.

¶ 24    In *Crespo*, the defendant and his partner, Maria Garcia, got into an argument, which intensified as they moved into the kitchen. *Id.* at 338. Defendant reached into a drawer and pulled out a knife. When Garcia tried to close the drawer, the defendant hit her in the head with his fist. When her daughter, Arlene, tried to intervene, defendant "stabbed her three times in rapid succession, once in the right arm, and twice in the left thigh." *Id.* He then grabbed Garcia by the hair and stabbed her. *Id.* Arlene survived, but Garcia died as a result of her injuries. After a jury trial, defendant was found guilty of first degree murder, armed violence, aggravated battery based on great bodily harm, and aggravated battery based on a deadly weapon. *Id.* at 339. On appeal, this court merged the two aggravated battery convictions into one conviction. *Id.* at 339-40. Defendant contended before the supreme court that the remaining aggravated battery conviction must be vacated because it stemmed from the same physical act on which his armed

violence conviction was based: the stabbing of Arlene. The State argued that since the defendant stabbed Arlene three times, each stabbing constituted a separate offense. *Id.* at 340.

¶ 25    Our supreme court acknowledged, based on its holding in *People v. Dixon*, 91 Ill. 2d 346 (1982), that each stab wound could support a separate offense because each stabbing constituted a separate act. *Crespo*, 203 Ill. 2d at 342. The court, however, examined the indictment in the case and found that "the counts charging defendant with armed violence and aggravated battery do not differentiate between the separate stab wounds. Rather, these counts charge defendant with the same conduct under different theories of criminal culpability." *Id.* The court also noted that in closing argument, the State addressed both charges by referencing evidence that defendant stabbed Arlene three times with a knife. *Id.* at 343-44. The State did not apportion each offense to a particular stab wound in the charges or in arguing the case before the jury. *Id.* at 345. A defendant has a "fundamental right" to be informed of the charges against him, and if he did not know that the State considered each stab to be a separate offense, he "would not have been able to defend the case accordingly." *Id.* Therefore, "in cases such as the one at bar, the indictment must indicate that the State intended to treat the conduct of defendant as multiple acts in order for multiple convictions to be sustained." *Id.*

¶ 26    Here, defendant was convicted of attempted first degree murder and aggravated battery with a firearm based on his firing of at least two gunshots at Derrick. The shots happened in quick succession, and there was no intervening act between the shots. The indictment charged defendant with attempted first degree murder in that he "knowingly performed an act which constituted a substantial step towards the commission of first degree murder, to wit: shooting [Derrick] about the body with a gun." The indictment for aggravated battery with a firearm charged that defendant, in discharging a firearm, "knowingly caused injury and bodily harm to

[Derrick] by shooting him about the body with a gun." Since the State did not apportion each offense to a particular gunshot, the charging instruments evinced the State's intent to treat defendant's conduct as a single act. See *id.* at 344. Further supporting our determination, the State consistently referred to defendant's act in closing argument as shooting "an unarmed man twice in the back." The State never tried to argue that one shot supported the attempted murder offense and another supported the aggravated battery with a firearm offense.

¶ 27 Although we find that defendant's petition sufficiently alleged a meritorious claim, to obtain relief defendant must also allege facts supporting due diligence in presenting the claim to the trial court, and due diligence in filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21. Convictions imposed in violation of the one-act, one-crime rule are merely voidable, not void. See *People v. Coady*, 156 Ill. 2d 531, 537-38 (1993). Only allegations that a judgment is void "negates the need to allege a meritorious defense and due diligence" in a section 2-1401 petition. *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 104 (2002).

¶ 28 Defendant alleged in his petition that he was not aware of the one-act, one-crime rule until September 7, 2013, and that he relied on his attorney to conduct his defense. The State, however, did not file a response, and the trial court made no finding as to whether defendant's petition sufficiently alleged due diligence. While we must take all well-pleaded allegations as true, the issue of defendant's diligence here raises questions of fact more suitable for determination after an evidentiary hearing. See *People v. Bumpers*, 229 Ill. 2d 632-33 (2008) (supervisory order) (the supreme court, in the exercise of its supervisory authority, vacated the appellate court's order where the trial court made no finding as to the defendant's culpable negligence in the untimely filing of his postconviction petition and directed the court to remand the cause for an evidentiary hearing to allow the State an opportunity to refute defendant's

allegations). Therefore, we reverse the dismissal of defendant's petition and remand the cause for an evidentiary hearing on the issue of defendant's diligence.

¶ 29                                    NO. 02-CR-6011

¶ 30                                    I. Background

¶ 31    On July 1, 2003, defendant pled guilty to possession of a controlled substance. Prior to his plea, defendant filed a motion to suppress evidence. The motion sought to suppress "certain physical evidence illegally seized from [defendant's] person." Defendant alleged that he was arrested at 7600 S. Colfax Avenue in Chicago, and "subsequent to his arrest certain police officers had occasion to search the defendant's person and possessions." During the search, the officers recovered cocaine. Defendant alleged that the stop, his arrest, and the search were conducted without probable cause and without his consent.

¶ 32    At the hearing, defendant testified that around midnight on July 22, 2002, he and his cousin were near 7600 S. Colfax Avenue in Chicago when officers jumped out of their car and asked what they were doing. Defendant told the officers that they were "doing nothing, going home," but the officers patted him down. They went through his pockets and found two bags of cocaine. Defendant denied that he had dropped the bags containing narcotics to the ground, stating instead that he kept the bags in his pockets. Defendant did not give the officers permission to search his pockets.

¶ 33    Officer Antonio Martinez testified that he and his partner, Officer Alex Guerrero, responded to a call of someone selling narcotics at 7600 S. Colfax Avenue on July 22, 2002. They received a description, and when they arrived at the location, they saw defendant standing by himself. When they approached defendant, announcing themselves as officers, defendant dropped two clear plastic knotted bags containing a white rock substance. Officer Martinez

- 12 -

recovered the bags, and defendant was taken into custody. Officer Guerrero's testimony corroborated Officer Martinez. The trial court determined that the officers did not search defendant when they recovered the drugs and denied the motion to suppress. Defendant pled guilty and was sentenced to two years in the Illinois Department of Corrections, with credit for days served in presentence custody. He did not withdraw his guilty plea or file a direct appeal.

¶ 34    On November 19, 2013, defendant filed a *pro se* postconviction petition, alleging that he pled guilty for a crime he did not commit. Defendant alleged that Officers Guerrero and Martinez falsely arrested him due to his failure to locate drugs for them. Defendant alleged that he was threatened by the officers and the Latin Kings to conceal the truth and, because he was afraid for himself and his family, he "could not come forth with such claims" earlier. The trial court found that defendant was "not entitled to relief because he has already served his sentence."

¶ 35    Defendant filed his *pro se* petition titled "Motion In Nature of Writ of Error Coram Nobis" on June 12, 2015. In his petition, defendant alleged that his arrest "was made by two members, and or associates of the Latin Kings street gang that were also working as Chicago Police Officers." Defendant alleged that Officers Guerrero and Martinez harassed him after the arrest of Kevin Turner on February 21, 2001. Approximately a week later, the officers jumped out of a police car, grabbed defendant, and told him that they were looking for 20 kilograms of cocaine that was missing from the Turner case. Officer Martinez told defendant that they were Latin Kings and threatened "that if he didn't find out for them the whereabout[s] of the drugs that they would put him away for a very long time."

¶ 36    Defendant's petition alleged that the officers arrested him on July 22, 2002, and took him to an alley near the 9200 block of Saginaw Avenue in Chicago. There, they planted "a bag full of clear knotted bags of what look[ed] to be crack cocaine" on defendant. They told defendant "not

to complain or tell anyone that they put narcotics on him and if he ever told about what they were up to that they would cause hurt to him and someone close to him." The officers informed defendant that they knew where his girlfriend, his children, and other family members lived and "they had people in the jail that could reach out and touch [defendant] if needed."

¶ 37    On August 12, 2013, defendant learned that Officers Guerrero and Martinez had been arrested and that they pled guilty to conspiracy and racketeering charges. He stated that the officers were "dirty cops who worked for the Latin Kings" and concealed their criminal conduct in 2002. He alleged that any defense based on the officers' behavior was unavailable to him before due to fraud or duress. Defendant attached his affidavit to the petition.

¶ 38    Defendant also attached press releases from the United States Department of Justice. The article described Officer Guerrero's conviction on a "conspiracy to possess with intent to distribute *** five kilograms or more of cocaine and 1,000 kilograms or more of marijuana, interference with commerce by threats of violence, and use and carrying of a firearm during and in relation to crimes of violence and drug trafficking." *Former Chicago Police Officer and Two Members of Latin Kings Street Gang Sentenced in Indiana for Roles in Racketeering Conspiracy*, U.S. Dep't of Justice (Jan. 11, 2013), https://www.justice.gov/opa/pr/ former-chicago-police-officer-and-two-members-latin-kings-street-gang-sentenced-indiana-roles [https://perma.cc/U2RQ-7JW9]. Officer Guerrero admitted to being associated with the Latin Kings and to participating in robberies at the direction of Latin Kings leader and coconspirator, Sisto Bernal. *Id.* "Specifically, Guerrero acknowledged that in approximately December 2006, he entered into the Hammond residence of James Walsh, a rival gang member. Guerrero and his police partner and co-defendant Antonio Martinez physically restrained Walsh and others while the home was searched and robbed." *Id.*

¶ 39    Officer Martinez pled guilty to racketeering and conspiracy to distribute more than 5 kilograms of cocaine and more than 1000 kilograms of marijuana, robbery, and using a firearm while committing these crimes. *Former Chicago Police Officer Pleads Guilty to Racketeering and Related Charges for Involvement With Latin Kings Gang*, U.S. Dep't of Justice (Dec. 2, 2011),https://www.justice.gov/opa/pr/former-chicago-police-officer-pleads-guilty-racketeering - and-related-charges-involvement [https://perma.cc/P4YF-4A38]. Officer Martinez admitted he "committed a series of robberies from 2004 to 2006 at the direction of the Latin Kings." *Id.* He admitted to participating in the armed robbery of a deceased Latin Dragon leader in Indiana and "that he picked up and delivered packages of cocaine on multiple occasions for two Latin Kings leaders." *Id.*

¶ 40    Also attached was a Freedom of Information Act (FOIA) response from the Chicago Police Department showing that a check for records of complaints against Officers Guerrero and Martinez came up with no records. A FOIA response from the Illinois Attorney General's Office stated that defendant's request for certain information pertaining to his July 22, 2002, arrest was unfounded.

¶ 41    The court dismissed defendant's *coram nobis* motion, although the order is not in the record. This court allowed defendant to file late notices of appeal from the trial court's July 22, 2015, orders.

¶ 42                                    II. Analysis

¶ 43    Defendant filed a "Motion in Nature of Writ of Error Coram Nobis." The legislature long ago replaced this common law writ with a statutory scheme that was the predecessor of section 2-1401 of the Code. *Warren County Soil & Water Conservation District v. Walters*, 2015 IL 117783, ¶ 33. Thus, we will treat defendant's motion as a section 2-1401 petition for relief.

¶ 44    The State argues on appeal that we should affirm the dismissal due to the untimeliness of defendant's petition. The State, however, did not file a response to the petition and thus did not raise the limitations period as a defense in the trial court below. For the reasons stated above, we find that the State has forfeited this affirmative defense on appeal. See *Pinkonsly*, 207 Ill. 2d at 564.

¶ 45    Nor do we find that *res judicata* serves as an absolute bar to defendant's claims. While defendant did raise his claims against Officers Guerrero and Martinez in a previously filed postconviction petition, the trial court dismissed that petition without considering the merits of defendant's claims because he had already served his sentence. Defendant further alleged that he could not raise this claim earlier or on direct appeal because he was under threat of harm at the time. Strict application of procedural bars may be relaxed where fundamental fairness so requires. *Flores*, 153 Ill. 2d at 274. We will address the merits of defendant's contentions.

¶ 46    Relief under section 2-1401 requires defendant to set forth specific factual allegations showing (1) the existence of a meritorious claim, (2) due diligence in presenting the claim to the circuit court, and (3) due diligence in filing the section 2-1401 petition. *Airoom*, 114 Ill. 2d at 220-21. Defendant contends that his petition sufficiently set forth a meritorious claim where he presented new information that, if known to the trial court at the time, would have prevented entry of a judgment against him. To set aside a judgment based on newly discovered evidence, defendant must show that the new evidence was not known to him at the time of trial and could not have been discovered with the exercise of due diligence. *People v. Waters*, 328 Ill. App. 3d 117, 127 (2002). Furthermore, "the new evidence must be so conclusive that it would probably change the result if a new trial is granted, must be material to the issues, and must be more than merely cumulative to the trial evidence." *Id.*

¶ 47    Defendant alleged in his petition that Officer Guerrero and Officer Martinez planted cocaine on him when he refused to give information about drugs from another case. He alleged that they threatened to harm him and his family if he complained or "told [anyone] about what they were up to." The new evidence defendant relied on consisted of press releases detailing the criminal activities engaged in by Officer Guerrero and Officer Martinez, and the officers' subsequent convictions. These articles, dated 2011 and 2013, clearly were not available to defendant at the time he pled guilty to possession of cocaine in 2003. This new evidence, however, must also "be of such conclusive character that it will probably change the result upon retrial." *People v. Patterson*, 192 Ill. 2d 93, 139 (2000).

¶ 48    When new evidence is alleged to support a contention that police misconduct coerced defendant to confess, courts consider several factors to determine whether it is of such conclusive character to warrant an evidentiary hearing. In *Patterson*, our supreme court found that the new evidence satisfied the conclusive character test where (1) the defendant consistently claimed he was tortured, (2) his claims of torture were and always had been "strikingly similar to other claims" depicted in the new evidence, (3) the officers identified in the evidence were the same officers in the defendant's case, and (4) the defendant's allegations were consistent with documented findings of torture against the officers. *Id.* at 145.

¶ 49    Here, the officers named in the press releases, Guerrero and Martinez, are the same officers in defendant's case. But unlike the defendant in *Patterson*, defendant here did not allege coercion in his motion to suppress, at trial, or in a direct appeal. Defendant stated that he could not allege coercion earlier because the officers threatened him and his family with harm if he complained or told anyone that they had planted drugs on him. Defendant, however, had filed a motion to suppress in which he alleged that the officers illegally searched him when they found

the drugs. Contrary to the allegations in his petition, defendant at that time had no misgivings about alleging misconduct against the officers. Also, defendant alleged in his petition that he possessed no narcotics until the officers retrieved a bag of cocaine from their car and "put narcotics on him." However, in his motion to suppress, defendant acknowledged that he had the drugs in his pockets but the officers performed an illegal search of his person. Defendant's petition "is properly dismissed where the allegations contained therein are contradicted by the record from the original trial proceedings." See *People v. Deloney*, 341 Ill. App. 3d 621, 629 (2003).

¶ 50    Further distinguishing this case from *Patterson*, the misconduct alleged by defendant was not the same as the criminal activity detailed in the press releases. Those articles stated that Officer Guerrero and Officer Martinez were convicted of racketeering, conspiracy to distribute narcotics, and armed robbery at the direction of the Latin Kings. Specifically, Officer Guerrero acknowledged that in December 2006, he entered into the Hammond residence of a rival gang member and, along with Officer Martinez, physically restrained him and others while the home was searched and robbed. Officer Martinez committed a series of robberies from 2004 to 2006. Specifically, he admitted to participating in the armed robbery of a deceased Latin Dragon leader in Indiana, and he picked up and delivered packages of cocaine on multiple occasions for two Latin King leaders. Defendant did not allege that he was a rival gang member or a victim of an armed robbery. Rather, he alleged that he was framed by the officers when he refused to cooperate with them, and was threatened with violence if he complained or told anyone what the officers "were up to." Moreover, there have been no other complaints filed against the officers that are "strikingly similar" to defendant's allegations. See *Patterson*, 192 Ill. 2d at 145.

Defendant's new evidence is not of such conclusive character that it would change the result upon retrial. Therefore, the trial court properly dismissed defendant's petition.

¶ 51                                  CONCLUSION

¶ 52    For the foregoing reasons, the trial court's dismissal of defendant's *coram nobis* petition is affirmed. However, we reverse the dismissal of defendant's section 2-1401 petition and remand for further proceedings consistent with this opinion.

¶ 53    Affirmed in part and reversed in part; cause remanded.

---

**No. 1-15-3118**

---

| | |
|---|---|
| **Cite as:** | *People v. Cathey*, 2019 IL App (1st) 153118 |

---

| | |
|---|---|
| **Decision Under Review:** | Appeal from the Circuit Court of Cook County, Nos. 92-CR-5333, 02-CR-6011; the Hon. Steven J. Goebel, Judge, presiding. |

---

| | |
|---|---|
| **Attorneys for Appellant:** | James E. Chadd, Patricia Mysza, and Bradley Jarka, of State Appellate Defender's Office, of Chicago, for appellant. |

---

| | |
|---|---|
| **Attorneys for Appellee:** | Kimberly M. Foxx, State's Attorney, of Chicago (Alan J. Spellberg and Matthew Connors, Assistant State's Attorneys, of counsel), for the People. |

---