2023 IL App (1st) 220472-U

Nos. 1-22-0472, 1-22-0637 (cons.)

Order filed April 26, 2023

Third Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County. |
| | ) | |
| v. | ) | No. 10 CR 14466 |
| | ) | |
| TARENZO DILLON, | ) | Honorable |
| | ) | Maria Kuriakos-Ciesil, |
| Defendant-Appellant. | ) | Judge, presiding. |

_____

JUSTICE BURKE delivered the judgment of the court.
Presiding Justice McBride and Justice Reyes concurred in the judgment.

**ORDER**

¶ 1    *Held*:  In case number 1-22-0472, we affirm the trial court's dismissal of defendant's section 2-1401 petition for relief from judgment, which challenged defendant's sentence, because defendant failed to establish that he acted with due diligence in filing that petition. We dismiss case number 1-22-0637 for lack of jurisdiction.

¶ 2     Following a jury trial, defendant, Tarenzo Dillon, was found guilty of aggravated battery with a firearm and was sentenced to 20 years' imprisonment.[1] On direct appeal, we affirmed his sentence over his contention that his sentence was excessive. *People v. Dillon*, 2014 IL App (1st) 123095-U. More than seven years after he was sentenced, defendant filed a *pro se* petition for relief from judgment pursuant to section 2-1401 of the Code of Civil Procedure (735 ILCS 5/2-1401 (West 2020)). Defendant's petition sought resentencing because the trial court relied on his prior conviction for aggravated unlawful use of a weapon (AUUW) in a 2005 case as an aggravating factor, and that conviction was vacated in 2020 pursuant to *People v. Aguilar*, 2013 IL 112116. The trial court dismissed defendant's section 2-1401 petition, and he now appeals that ruling. For the following reasons, we affirm the dismissal of defendant's section 2-1401 petition in case number 1-22-0472. We dismiss case number 1-22-0637 for lack of jurisdiction.

¶ 3                                   I. BACKGROUND

¶ 4                              A. Trial and Sentencing

¶ 5     This appeal only concerns defendant's section 2-1401 petition seeking resentencing, so we recite only the facts that are necessary to resolve this matter. Defendant proceeded to a jury trial on one count of attempted murder (720 ILCS 5/8-4(a), 9-1(a)(1) (West 2010)) and one count of aggravated battery with a firearm (720 ILCS 5/12-4.2(a)(1), 12-4.3(a) (West 2010)). The evidence established that defendant had an argument with another man at a child's birthday party on July 18, 2010. Defendant retrieved a firearm from his vehicle and fired it toward the man he had been arguing with. An 18-month-old girl who was playing nearby suffered gunshot wounds to her jaw,

---

[1] The order resolving defendant's direct appeal spells his first name as "Torenzo." Defendant's *pro se* section 2-1401 petition in this case appears to spell his first name as "Tarenzo," so we will use that spelling.

collarbone, and shoulder blade, causing her severe and permanent injury. Several eyewitnesses identified defendant as the shooter. The jury found defendant guilty of aggravated battery with a firearm. Defendant filed a motion for a new trial, which the trial court denied.

¶ 6     The trial court held a sentencing hearing on September 26, 2012. The court stated that it had received the Presentence Investigation Report (PSI), which detailed defendant's criminal history. The PSI, which is included in the record on appeal, indicates that, in 2010, defendant was convicted of misdemeanor theft of public money in federal court and was sentenced to probation. In 2005, he was charged with AUUW and was sentenced to probation, which was terminated successfully in 2007. In 2002, he was placed on supervision for a misdemeanor retail theft charge; supervision was discharged that year. Regarding defendant's AUUW conviction, Chicago police Officer Garcia testified that he and his partners pulled over a vehicle driven by defendant, whom he identified in court, on October 28, 2005. Defendant did not produce a driver's license, so the officers arrested him and recovered a loaded semiautomatic handgun from underneath the driver's seat. After receiving *Miranda* warnings, defendant stated that he forgot the firearm was in his vehicle and that he never had a Firearm Owners Identification (FOID) card.

¶ 7     The mother of the girl that defendant shot submitted a victim impact statement in which she described the graphic injuries and permanent scarring to her daughter's head and upper body, the fear that she and her daughter experienced after this incident, and the financial strain of caring for her daughter's injuries.

¶ 8     In mitigation, defendant submitted letters from his family, friends, and coworkers attesting to his good character. Defendant's cousin, Chantae Connolly, testified that defendant helped take care of her child in addition to raising and financially supporting his own children. She described

defendant as nonviolent, religious, reliable, and helpful. Connolly acknowledged that defendant collected unemployment benefits despite being employed and that "in 2005 he was arrested with a loaded gun in the car that he was driving." Defendant's stepfather, Darryl Ross, also described defendant as helpful and reliable, and acknowledged defendant's cases involving theft of government funds and AUUW. In allocution, defendant expressed his hope that the victim would recover and that the court would give him the opportunity to "guide [his] children and [his] family in the right direction."

¶ 9    The State argued that defendant caused severe physical and mental harm to the child he shot. In addition, the State highlighted that "[i]n in 2005 the defendant pled guilty to a felony conviction of [AUUW]. A weapon that he was driving around with on the streets of Chicago, a weapon that was loaded, and not just loaded in the magazine, there was a bullet in the chamber." The State argued that defendant's criminal history undermined his mitigation evidence and requested a 30-year sentence. In response, defendant acknowledged that he "did have a prior [A]UUW, [and] that is a problem," but argued that, viewed as a "whole person," he should receive a sentence of 6 to 8 years.

¶ 10    The trial court sentenced defendant to 20 years' imprisonment. The court focused on the physical and mental trauma that defendant caused to the young victim and her mother. The court largely discredited defendant's mitigating evidence, explaining that his behavior did not support his family's claims that he was a nonviolent, upstanding, and religious man. The court mentioned that defendant "had a previous gun conviction *** on the streets of Chicago" and that he "was given the opportunity to change his life after crime number one possessing a gun in the streets of Chicago." Defendant made a motion to reconsider his sentence, which the trial court denied.

¶ 11                          B. Direct Appeal and Postconviction Proceedings

¶ 12    On direct appeal, defendant contended that his sentence was excessive because the trial court failed to consider mitigating evidence that he (1) had a limited criminal history, (2) had a consistent work history and financially supported his children and their mother, (3) planned to return to school and start a career as an auto mechanic, and (4) expressed remorse and had engaged in community service. *Dillon*, 2014 IL App (1st) 123095-U, ¶ 14. Defendant also argued that the trial court discredited his evidence in mitigation even though the State offered nothing to indicate that the mitigating evidence was untrue. *Id.* This court reviewed defendant's sentence for an abuse of discretion because it was within the sentencing range of 6 to 30 years. *Id.* ¶ 15. In affirming defendant's sentence, this court explained that the record established that the trial court carefully considered defendant's mitigating evidence and was free to give that evidence less weight than the seriousness of the offense. *Id.* ¶¶ 16-20. While defendant's direct appeal was pending, our supreme court decided *Aguilar*. *Aguilar* held that the Class 4 version of the AUUW statute in effect at the time (725 ILCS 5/24-1.6(a)(1), (a)(3)(A), (d) (West 2010)), which categorically prohibited the possession and use of an operable firearm outside the home, was unconstitutional. *Aguilar*, 2013 IL 112116, ¶ 22.

¶ 13    On December 17, 2014, defendant filed a petition for relief under the Post-Conviction Hearing Act (725 ILCS 5/122-1 *et seq.* (West 2014)). Defendant alleged that (1) the trial court should have declared a mistrial due to a witness discussing her testimony with two other witnesses who had not yet testified, (2) the State failed to move for a mistrial and file charges for witness tampering based on the same incident, (3) the State violated *Brady v. Maryland*, 373 U.S. 83 (1963) by failing to disclose a police report, (4) a detective witness committed perjury during trial, (5)

trial counsel rendered ineffective assistance, (6) appellate counsel rendered ineffective assistance, and (7) he was entitled to discovery to identify the "true offender." None of defendant's postconviction claims addressed his sentence or the impact of his prior AUUW conviction on it. The trial court summarily dismissed defendant's petition. We affirmed and granted appointed appellate counsel's motion to withdraw pursuant to *Pennsylvania v. Finley*, 481 U.S. 551 (1987). *People v. Dillon*, No. 1-15-1132 (2017) (unpublished summary order under Supreme Court Rule 23(c)).

¶ 14                    C. Section 2-1401 Proceedings

¶ 15    On February 7, 2020, defendant filed a *pro se* section 2-1401 petition in this case. He argued that, during the sentencing hearing, the trial court heard evidence in aggravation regarding his prior AUUW conviction, which had become void pursuant to *Aguilar*. Defendant highlighted that the State called Officer Garcia to testify about defendant's arrest for AUUW, asked Connolly and Ross about that case, and directed the court's attention to the AUUW conviction during argument. He also quoted the trial court's mention of his conviction for "possessing a gun in the streets of Chicago" as a reference to the AUUW conviction. Defendant asked the trial court to (1) vacate his conviction for AUUW, (2) determine how much weight the sentencing court gave to that conviction, (3) determine whether the State properly submitted that conviction in aggravation, and (4) determine whether Officer Garcia's testimony was prejudicial to defendant at sentencing. Defendant attached to his section 2-1401 petition his own affidavit, which attested that his petition was "filed in good faith."

¶ 16　　On September 23, 2020, defendant moved, separately from his pending section 2-1401 petition, to vacate his AUUW conviction as unconstitutional pursuant to *Aguilar*.[2] That conviction was vacated on October 1, 2020, and defendant obtained a certificate of innocence on December 10, 2020.

¶ 17　　On December 7, 2021, the trial court received a letter from defendant complaining about his counsel's representation. Defendant attached a second version of his *pro se* section 2-1401 petition, which made essentially the same arguments as his February 7, 2020, petition. This version of defendant's petition acknowledged that "defense counsel could not have known at the date of the defendant's sentencing hearing on 9-26-12 that aggravated unlawful use of a weapon statute violated the United States Constitution as that was not found to be the case until the *Aguilar* decision in 2013." He argued that "we now know that the reference to the facially unconstitutional [AUUW] statute in any legal proceeding civil or criminal does indeed violate the defendant's constitutional rights." The State did not file a response to either version of defendant's petition.

¶ 18　　On March 4, 2022, the trial court dismissed defendant's section 2-1401 petition.[3] The trial court concluded that defendant failed to "put forth a cognizable claim that would entitle him to a

---

[2] We take the facts regarding the vacatur of defendant's AUUW conviction primarily from the trial court's memorandum order resolving his section 2-1401 petition. The appendix to appellant's brief contains a December 10, 2020, order in case number 05 CR 26282, which grants defendant a certificate of innocence and orders expungement of his arrest records in that case. However, a party may not supplement the record by including evidence in an appendix to his brief. *People v. Williams*, 2012 IL App (1st) 100126, ¶ 27. That said, the reports of proceedings in the record on appeal do include a representation by defendant's counsel confirming that his AUUW conviction was vacated pursuant to *Aguilar* on October 1, 2020.

[3] We note two issues in the trial court's memorandum order to avoid confusion in this case. First, the trial court stated that defendant filed his section 2-1401 petition on December 7, 2021. Defendant initially filed his *pro se* section 2-1401 petition on February 7, 2020, and filed a second, but essentially identical, version of that petition with his letter to the court of December 7, 2021. Second, the trial court states that defendant "claim[ed] that his sentence was void." That is incorrect. Defendant claimed that his AUUW conviction in the 2005 case was void under *Aguilar*, not that his sentence in this case is void.

new sentencing hearing" because the sentencing hearing transcript indicated that the sentencing court "regarded [defendant's AUUW] conviction with little weight whereas it regarded other factors, such [as defendant's] prior theft offense, the depravity of his crime, and the youth and overall suffering of the victim, with much more weight." The court also noted that defendant's 20-year sentence fell in the middle of the range for a Class X offense, which is 6 to 30 years. The court concluded that defendant failed to show cause for relief under section 2-1401 and dismissed his petition.

¶ 19    Defendant filed two *pro se* notices of appeal. The first, filed on March 24, 2022, appealed from the dismissal of his section 2-1401 petition, and initiated case number 1-22-0472. Defendant also filed a *pro se* motion to reconsider the dismissal of his section 2-1401 petition in the trial court, alleging that the court held an improper *ex parte* meeting with the State on the date that the court dismissed his petition. The motion to reconsider is file-stamped April 8, 2022. On April 22, 2022, the trial court denied that such a meeting occurred and denied defendant's motion to reconsider. On May 3, 2022, defendant filed a *pro se* notice of appeal from the denial of his motion to reconsider, which initiated case number 1-22-0637. We granted defendant's motion to consolidate the two appeals.

¶ 20    Defendant timely appealed.

¶ 21                                    II. ANALYSIS

---

Defendant's reply brief confirms that he "never argued that his sentencing hearing was void. Rather he clearly argued in his opening brief that the use of the *void AUUW conviction* at his sentencing hearing requires a new sentencing hearing." (Emphasis in original.). This distinction will be relevant to our analysis of defendant's due diligence in filing his section 2-1401 petition.

¶ 22    On appeal, defendant argues that his section 2-1401 petition should have been granted and that he should be resentenced because the trial court relied on his now-vacated conviction for AUUW as an aggravating factor during his sentencing hearing.

¶ 23                                    A. Jurisdiction

¶ 24    As an initial matter, the State contends that we lack jurisdiction over case number 1-22-0637 "because [defendant] had already filed his notice of appeal in 1-22-0472 prior to filing the motion to reconsider that is the subject of 1-22-0637." Generally, the filing of a notice of appeal divests the trial court of jurisdiction, and the appellate court's jurisdiction attaches immediately. *General Motors Corp. v. Pappas*, 242 Ill. 2d 163, 173 (2011). However, under Supreme Court Rule 303, when a party files a timely postjudgment motion, that delays the effectiveness of any pending notice of appeal until the trial court resolves the postjudgment motion. Ill. S. Ct. R. 303(a)(2) (eff. July 1, 2017); see also *Chand v. Schlimme*, 138 Ill. 2d 469, 474-77 (1990) (where the appellant simultaneously filed a timely postjudgment motion and a notice of appeal, the trial court retained jurisdiction until it disposed of the posttrial motion). A postjudgment motion must be filed within 30 days of a final judgment. 735 ILCS 5/2-1203(a) (West 2022). So, if defendant's motion to reconsider was timely, then it delayed the effectiveness of his first notice of appeal, and we have jurisdiction over both appeals.

¶ 25    The trial court dismissed defendant's section 2-1401 petition on March 4, 2022. A certificate of service in the record, which is hand-dated March 16, 2022, indicates that a "motion for reconsideration" and a notice of appeal were mailed to the clerk of the circuit court. The clerk filed-stamped defendant's notice of appeal on March 24, 2022, initiating case number 1-22-0472. However, the clerk did not file-stamp defendant's motion to reconsider until April 8, 2022. So, it

appears that defendant's motion to reconsider was untimely because it was filed more than 30 days after the dismissal of his section 2-1401 petition. However, defendant may be able to rely on the date of mailing – apparently March 16, 2022 – as the filing date. "To rely on the date of mailing as the filing date," an incarcerated defendant must "provide proof of mailing by filing a proof of service" that complies with Supreme Court Rule 12(b)(6) (eff. July 1, 2017). *People v. Shines*, 2015 IL App (1st) 121070, ¶ 33. Rule 12(b)(6) requires a "self-represented litigant residing in a correctional facility" to certify under section 1-109 of the Code of Civil Procedure (735 ILCS 5/1-109 (West 2022)) "the person who deposited the document in the institutional mail, stating the time and place of deposit and the complete address to which the document was to be delivered." Ill. S. Ct. R. 12(b)(6) (eff. July 1, 2017). In the absence of such a certificate of service, "the date the circuit clerk's office file-stamped the motion controls." *People v. Blalock*, 2012 IL App (4th) 110041, ¶ 7.

¶ 26    The certificate of service associated with defendant's motion to reconsider does not indicate the date or time at which defendant placed the motion in the institutional mail, or at what institution he did so. Although the section 1-109 certification is dated March 16, 2022, the spaces intended for such information on the preprinted Rule 12(b)(6) certificate of service are blank: "PLEASE TAKE NOTICE that at: _____ AM/PM _____, 2022, I placed the documents listed below in the institutional mail at _____ Correctional Center." We cannot say that such a certificate complies with Rule 12(b)(6). Therefore, the clerk's April 8, 2022, file-stamp on the motion to reconsider controls. Defendant's motion to reconsider was untimely because it was filed more than 30 days after the dismissal of his section 2-1401 petition, and the trial court did not have jurisdiction to consider that motion. See *Keener v. City of Herrin*, 235 Ill.

2d 338, 350 (2009) (a trial court has no jurisdiction to rule upon a motion to reconsider filed more than 30 days after the original judgment). The trial court's denial of defendant's motion to reconsider is void for lack of jurisdiction, and we lack jurisdiction to hear defendant's appeal from the denial of his motion to reconsider. See *Lampe v. Pawlarczyk*, 314 Ill. App. 3d 455, 475 (2000). We do not have jurisdiction over case number 1-22-0637 because defendant did not file the notice of appeal in that case within 30 days of the dismissal of his section 2-1401 petition or within 30 days of an order disposing of a timely postjudgment motion. *Goral v. Kulys*, 2014 IL App (1st) 133236, ¶ 20 (citing *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 538 (1984)). Accordingly, we dismiss case number 1-22-0637 for lack of jurisdiction. See *Galarza v. Direct Auto Insurance Company*, 2022 IL App (1st) 211595, ¶ 56.

¶ 27    We note that this jurisdictional issue will not impact our resolution of the substance of defendant's appeal, which does not concern the trial court's ruling on his motion to reconsider. Case number 1-22-0472, which was initiated by a timely notice of appeal filed on March 24, 2022, addresses the dismissal of defendant's section 2-1401 petition.

¶ 28                    B. Section 2-1401 Petition

¶ 29    Defendant contends that the trial court should have granted his section 2-1401 petition, which sought resentencing because the trial court considered his now-vacated prior conviction for AUUW as an aggravating factor during his sentencing hearing. Section 2-1401 provides a mechanism for vacating a final judgment that is more than 30 days old. *People v. Stoecker*, 2020 IL 124807, ¶ 18; 735 ILCS 5/2-1401 (West 2020). Although section 2-1401 is a civil remedy, it applies to criminal cases as well. *Stoecker*, 2020 IL 124807, ¶ 18. The purpose of section 2-1401 is to present facts outside the record that, if known at the time judgment was entered, would have

prevented the entry of that judgment. *People v. Gamez*, 2017 IL App (1st) 151630, ¶ 8. Section 2-1401 also allows a petitioner to challenge a prior judgment as void. *Id.* The trial court dismissed defendant's section 2-1401 petition without an evidentiary hearing, so our review is *de novo* (see *id.*), meaning that we perform the same analysis as the trial court (see *People v. Miles*, 2017 IL App (1st) 132719, ¶ 19).

¶ 30     The State raises three potential procedural bars to defendant's section 2-1401 petition; namely, that defendant (1) filed his petition after the two-year limitations period of section 2-1401(c), (2) forfeited his challenge to his sentence by failing to raise it during postconviction proceedings, and (3) failed to establish that he acted with due diligence in bringing this claim before the trial court. We address each potential procedural bar in turn.

¶ 31                                    1. Timeliness

¶ 32     Both parties acknowledge that defendant filed his petition more than seven years after he was sentenced. Generally, a section 2-1401 petition must be filed within two years of entry of the judgment that it attacks. See 735 ILCS 5/2-1401(c) (West 2020); *People v. Thompson*, 2015 IL 118151, ¶ 28. However, the State did not challenge the timeliness of defendant's petition in the trial court, so it has forfeited that issue. See *People v. Pinkonsly*, 207 Ill. 2d 555, 564 (2003). The State does not contend otherwise, nor does it argue that we should affirm the dismissal of defendant's petition on grounds of untimeliness. Accordingly, we will not decide whether defendant's petition was timely within the two-year limitations period of section 2-1401(c).

¶ 33                                    2. Forfeiture

¶ 34     The State argues that defendant has forfeited this challenge to his sentence because he could have raised it during postconviction proceedings but did not. It is well-established that issues

that could have been raised on direct appeal, but were not, are forfeited in section 2-1401 proceedings. *People v. Addison*, 371 Ill. App. 3d 941, 947 (2007). This court has also stated that a party cannot use a section 2-1401 petition to relitigate issues that "have previously been or could have been adjudicated." (Internal quotation marks omitted.) *Stolfo v. KinderCare Learning Centers, Inc.*, 2016 IL App (1st) 142396, ¶ 29.

¶ 35    Defendant was sentenced on September 26, 2012, and filed his direct appeal that day. He filed the opening brief in his direct appeal on July 30, 2013.[4] Our supreme court decided *Aguilar* on September 12, 2013. *Aguilar*, 2013 IL 112116. Defendant filed his reply brief in his direct appeal on June 10, 2014, and that appeal was decided without oral argument on November 26, 2014. In theory, defendant could have realized that his AUUW conviction had become void under *Aguilar* during the briefing of his direct appeal. But, as a practical matter, it would have been difficult to bring that issue to this court's attention at the time. Defendant would have been forced to raise the voidness of his AUUW conviction and its impact on his sentence for the first time in his reply, which is generally improper. See *People v. Taylor*, 2019 IL App (1st) 160173, ¶ 41 ("A claim raised for the first time in a reply brief is forfeited."). We will not fault defendant for not raising this issue on direct appeal, particularly because the State acknowledges that he "could not have raised the issue *** in his first appeal."

¶ 36    However, there is no question that defendant could have raised this issue in his postconviction petition. Defendant filed his postconviction petition in December 2014, more than a year after *Aguilar* was decided. Defendant's postconviction petition would have been an

---

[4] We take judicial notice of this court's docket in defendant's direct appeal. See *People v. Phillips*, 219 Ill. App. 3d 877, 878 (1991).

appropriate place to raise his claim that the sentencing court considered his now-void AUUW conviction as an aggravating factor. The Post-Conviction Hearing Act allows a defendant to assert that there was a substantial denial of his federal or state constitutional rights at sentencing. *People v. Dorsey*, 2021 IL 123010, ¶ 31. When a court bases its sentence on a prior conviction as an aggravating factor and that conviction is subsequently vacated, the court has infringed the defendant's right to be sentenced based on accurate information about his criminal background. *United States v. Tucker*, 404 U.S. 443, 447-49 (1972); see also *People v. Reynolds*, 116 Ill. App. 3d 328, 330-31 (1983). Yet, defendant's postconviction petition did not challenge his sentence on any grounds, including the sentencing court's consideration of his AUUW conviction that had become void under *Aguilar*.

¶ 37     Nevertheless, we will not find forfeiture due to defendant's failure to raise this claim in postconviction proceedings. Illinois law is clear that claims that could have been raised on direct appeal are barred in a section 2-1401 petition. *Addison*, 371 Ill. App. 3d at 947. It is also clear that claims that were raised and resolved on direct appeal or in other collateral proceedings are barred by *res judicata* and cannot form the basis of a section 2-1401 petition. *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 21. However, the law is not clear that the same bars apply to a claim that could *not* have been raised on direct appeal, but *could* have been raised in a postconviction petition, but was not. The State cites no authority in support of its argument that defendant "forfeited his claim that the trial court improperly considered his AUUW conviction when he failed to raise it in his 2014 post-conviction petition." We have found no such authority. *Stolfo*'s suggestion that section 2-1401 bars all claims that "could have been adjudicated" previously appears, at first blush, to include more than just claims that could have been raised on direct appeal. (Internal quotations

omitted.) *Stolfo*, 2016 IL App (1st) 142396, ¶ 29. However, that language appears in the context of whether "litigants may use a section 2-1401 petition as a second opportunity to raise arguments that were, or could have been, made in a direct appeal." *Id. Stolfo*, a civil case, does not hold that a criminal defendant who could not have raised a claim on direct appeal, but could have raised the claim during postconviction proceedings and did not, forfeits that claim in section 2-1401 proceedings. As best we can determine, no Illinois authority holds as much. Accordingly, we decline to find forfeiture on that basis.

¶ 38                                    3. Due Diligence

¶ 39    The State next argues that defendant did not act with due diligence in filing his section 2-1401 petition. To state a claim for relief under section 2-1401, a petitioner must " 'affirmatively set forth specific factual allegations supporting each of the following elements: (1) the existence of a meritorious defense or claim; (2) due diligence in presenting this defense or claim to the circuit court in the original action; and (3) due diligence in filing the section 2-1401 petition for relief.' "[5] *People v. Glowacki*, 404 Ill. App. 3d 169, 171 (2010) (quoting *Smith v. Airoom, Inc.*, 114 Ill. 2d 209, 220-21 (1986)). With respect to due diligence, first, the petitioner must show that his failure to discover new facts prior to the entry of judgment was the result of an excusable mistake and not a product of negligence. *G.M. Sign, Inc. v. Schane*, 2013 IL App (2d) 120434, ¶ 40. Second, the petitioner must show that he filed the petition itself in a timely manner, without undue delay after becoming aware of the factual basis for the petition. *Id.* The petitioner has the burden to establish, by a preponderance of the evidence, his due diligence in presenting his claim and filing his section

---

[5] The exception to the due diligence pleading requirement is when the section 2-1401 petition contends that a judgment is void. *Sarkissian v. Chicago Bd. of Educ.*, 201 Ill. 2d 95, 104 (2002). As discussed above, defendant does not argue that his sentence is void, so he must show due diligence in pursuing section 2-1401 relief.

2-1401 petition. *People v. Vincent*, 226 Ill. 2d 1, 7-8 (2007). A trial court may dismiss a section 2-1401 petition if the petitioner fails to demonstrate that he exercised due diligence. *People v. Bramlett*, 347 Ill. App. 3d 468, 473 (2004). "The grounds available to a court for dismissing for lack of due diligence include the mere failure to offer a reasonable excuse for undue delay in filing the petition." *Id.*

¶ 40    Defendant's section 2-1401 petition does not set forth any factual allegations to establish his due diligence in filing the petition. *Aguilar* was decided in 2013. More than seven years later, in 2020, defendant filed his section 2-1401 petition challenging the sentencing court's consideration of his AUUW conviction that had become void under *Aguilar*. When defendant initially filed his petition, he had not even obtained vacatur of his AUUW conviction; rather, he asked the trial court to vacate it in that petition. Defendant's petition gives no explanation as to why he waited until 2020 to (1) seek vacatur of a conviction that became void under *Aguilar* in 2013 and (2) challenge his 2012 sentence based on the use of that void conviction in aggravation. We do not know why defendant waited more than seven years to raise this issue, and nothing in the record offers any explanation for his delay. Defendant has not established that he acted with due diligence in filing his section 2-1401 petition. Accordingly, the trial court properly dismissed defendant's section 2-1401 petition. See *id.* (affirming the dismissal of a section 2-1401 petition that did not explain a delay in filing of more than two years). We can affirm on this basis even though the trial court did not dismiss the petition based on a lack of due diligence. See *People v. Harvey*, 379 Ill. App. 3d 518, 521 (2008) (noting that an appellate court "may affirm the trial court's judgment on any basis supported by the record, regardless of the actual reasoning or grounds relied upon by the circuit court.").

¶ 41    Defendant does not contend that he acted with due diligence in filing his section 2-1401 petition. Rather, he requests that, "[i]f this Court finds that [his] efforts as reflected in the record are insufficient to show due diligence, it should grant [him] the opportunity to show that he had a 'reasonable excuse' for not filing his 2-1401 petition before he did," citing *Cathey*. In *Cathey*, the defendant was found guilty of attempted first degree murder and aggravated battery with a firearm and was sentenced to 20 years' imprisonment. *Cathey*, 2019 IL App (1st) 153118, ¶ 9. More than 20 years later, he filed a section 2-1401 petition alleging a one-act, one-crime violation at sentencing. *Id.* ¶¶ 12, 19. The State did not file a response, and the trial court dismissed the petition as untimely under section 2-1401(c) and "because aggravated discharge of a firearm and attempt murder are separate convictions." *Id.* ¶ 12. On appeal, this court explained that "timeliness under section 2-1401 is an affirmative defense that a responding party may waive or forfeit by failing to raise the issue below," so the trial court could not dismiss the defendant's section 2-1401 petition as untimely when the State never raised the issue of timeliness. *Id.* ¶¶ 16, 18 (citing *Pinkonsly*, 207 Ill. 2d at 562-63). In addition, there were factual questions regarding the defendant's due diligence because he "alleged in his petition that he was not aware of the one-act, one-crime rule until September 7, 2013, and that he relied on his attorney to conduct his defense." *Id.* ¶ 28. This court reversed the dismissal of the defendant's section 2-1401 petition and remanded for an evidentiary hearing on the issue of due diligence. *Id.* ¶¶ 28, 52.

¶ 42    There are two key differences between *Cathey* and this case. First, unlike the trial court in *Cathey*, the trial court in this case did not *sua sponte* dismiss defendant's section 2-1401 petition as untimely, so the primary basis for reversal in *Cathey* does not exist in this case. Second, the petition in *Cathey* explained the defendant's delay in filing; namely, that he learned of the one-act,

one-crime rule some 20 years after his sentencing. In this case, defendant's petition offers no such explanation. Defendant's section 2-1401 petition acknowledges that his counsel could not have known of the voidness of his AUUW conviction at the time of sentencing in 2012 because *Aguilar* was decided in 2013, but it offers no explanation as to why defendant took no action on that issue for more than seven years. Defendant's briefs do not identify any factual issues regarding his due diligence that require further development in an evidentiary hearing. We see no need to remand this case for an evidentiary hearing on the issue of due diligence. Accordingly, we affirm the trial court's dismissal of defendant's section 2-1401 petition.

¶ 43                                              III. CONCLUSION

¶ 44     For the foregoing reasons, we affirm the trial court's dismissal of defendant's section 2-1401 petition in case number 1-22-0472. Case number 1-22-0637 is dismissed for lack of jurisdiction.

¶ 45     1-22-0472: Affirmed.

¶ 46     1-22-0637: Dismissed.