2024 IL App (1st) 231030-U

No. 1-23-1030

Order filed November 8, 2024

Fifth Division

**NOTICE:** This order was filed under Supreme Court Rule 23 and is not precedent except in the limited circumstances allowed under Rule 23(e)(1).

_____

IN THE

APPELLATE COURT OF ILLINOIS

FIRST DISTRICT

_____

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) | Appeal from the |
| | ) | Circuit Court of |
| Plaintiff-Appellee, | ) | Cook County |
| | ) | |
| v. | ) | No. 17 CR 6860 |
| | ) | |
| JAMES WARREN, | ) | Honorable |
| | ) | Paul S. Pavlus, |
| Defendant-Appellant. | ) | Judge presiding. |

_____

JUSTICE NAVARRO delivered the judgment of the court.
Presiding Justice Mikva and Justice Mitchell concurred in the judgment.

**ORDER**

¶ 1    *Held*:    We lack jurisdiction to consider the circuit court's denial of defendant's Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) motions due to the untimely filing of a notice of appeal and affirm the court's denial of defendant's section 2-1401 petition.

¶ 2    After pleading guilty to aggravated battery with a firearm, the circuit court sentenced defendant James Warren to 15 years' imprisonment. More than five months after being sentenced, he filed two motions, one *pro se* and one through private counsel, under Illinois Supreme Court

Rule 604(d) (eff. Apr. 15, 2024) challenging his guilty plea and sentence. Additionally, more than two years after being sentenced, Warren filed a section 2-1401 petition (735 ILCS 5/2-1401 (West 2022)) through private counsel. The court found his Rule 604(d) motions and section 2-1401 petition untimely and denied them. Warren now appeals the court's denials and contends that: (1) his *pro se* Rule 604(d) motion had been recharacterized by the court as a postconviction petition, rendering it timely filed and (2) his section 2-1401 petition was timely because the court had stayed the time limitation to file such a petition. For the reasons that follow, we lack jurisdiction to consider the court's denials of Warren's Rule 604(d) motions and affirm the court's denial of his section 2-1401 petition.

¶ 3                                    I. BACKGROUND

¶ 4     A grand jury indicted Warren on several counts of attempted first-degree murder, aggravated battery with a firearm and aggravated unlawful use of a weapon based on a shooting that occurred in April 2017. While the case was proceeding, Judge Timothy Chambers, the trial judge presiding over Warren's case, ordered an investigation report of Warren be completed by the adult probation department of the circuit court, which was subsequently completed and filed. As the case continued, Warren and the State had discussions about a possible plea agreement, but those discussions stalled.

¶ 5     On May 14, 2019, after a jury had been selected, Warren entered a blind guilty plea to one count of aggravated battery with a firearm. Judge Chambers accepted Warren's guilty plea and sentenced him to 15 years' imprisonment. Judge Chambers admonished Warren about his appeal rights, informing him that, in order to appeal, he had to first file a post-plea motion within 30 days. Warren indicated he understood.

¶ 6    On October 31, 2019, a *pro se* "Motion to Modify Sentence" was docketed. In the motion, Warren claimed that he entered the blind guilty plea "under the impression from [his] attorney that [he] would receive a better deal than" what the State had already offered him. Warren insinuated that he felt pressured to plead guilty because, on the morning his trial was set to commence, his attorney "told [him] that he was no longer confident taking [the] case to trial and wanted to discuss a plea deal instead." This, in turn, made Warren feel "very confused," especially given his inexperience with the law. Warren added that he "did not fully understand what this meant but of course, felt very insecure" and decided to enter the blind guilty plea rather than proceed to trial. Warren noted that he was "not telling" the court this information "in order to plead not guilty." Instead, he was requesting that his sentence be modified because he never had the ability to tell the court his "side of the story." Warren asserted that the shooting was an isolated incident and he was a good person, who had been suffering from mental health issues at the time of the shooting. Warren alleged that, while in prison he received mental health treatment, had been fully rehabilitated and did not need to spend "another 13 years" in prison. Warren acknowledged that his motion had to be filed within 30 days of his sentence, but asked the court to consider it nonetheless based on the circumstances, including his inability to access the law library, his unawareness that he would be sentenced the same day he pled guilty and his trial counsel's failure to inform him of his "legal options after sentencing." Warren attached various exhibits to his motion, including certificates earned while incarcerated and character reference letters.

¶ 7    Warren's motion was initially placed on the call of a judge other than Judge Chambers. On February 13, 2020, after multiple continuances, the case was transferred to Judge Chambers. There is no report of proceedings from that court date, but, according to the court's "Case Summary" and "Criminal Disposition Sheet," Judge Chambers appointed an assistant public defender to represent

Warren. A notation in the Case Summary from that day states: "Motion for Writ of *Habeas Corpus*." For approximately a year, Warren's case was continued with no action taken on his *pro se* motion. Though, on July 2, 2020, there is a notation on the Criminal Disposition Sheet that the case was a "PC." There are no reports of proceedings from any of these court dates.

¶ 8    In February 2021, at the beginning of a status hearing before Judge Chambers, private counsel appeared on Warren's behalf and noted that Warren was not present because it was "not a live case." In response, an assistant state's attorney asserted that "[i]t's a postconviction, Judge." Given the discussion, Judge Chambers passed the case. When Judge Chambers recalled the case, Warren's private counsel re-introduced himself and the assistant state's attorney again noted that the case was "a postconviction." Warren's assistant public defender indicated that Warren's family told her Warren was retaining private counsel. The assistant public defender stated: "Mr. Hooper," a supervisor in the Cook County State's Attorney's postconviction unit, "[was] not on" the case "because [she] had not filed anything." The assistant public defender subsequently moved to withdraw from the case, and Judge Chambers granted her leave to do so.

¶ 9    When discussing a status date, Warren's private counsel indicated that he needed time to investigate the case to determine exactly what Warren had filed *pro se* and noted that, based on the online court record, it "look[ed] like a *habeas* petition." Judge Chambers interjected and asserted that Warren's *pro se* motion "appear[ed] to be characterized as a postconviction." Warren's private counsel responded that, whatever it was, "it didn't look right." Counsel asked: "I'm just wondering if the Court would be okay with maybe staying any deadlines, allowing me to investigate and figure this thing out." Judge Chambers responded: "I will do that." After selecting the next court date, Judge Chambers asked the assistant state's attorney to "reach out to Mr. Hooper" to alert him. The assistant state's attorney responded that she would, but noted that

"we're not on the case yet because nothing has been filed. There's no [Rule] 651(c) certificate." In the Case Summary and Criminal Disposition Sheet from that date, there is a notation that it was a "PC CASE."

¶ 10    Two months later, at the subsequent hearing, in which Judge Anjana Hansen presided, Warren's counsel stated that "[t]his is actually a post-conviction matter" and asked for a continuance so that he could "make [his] filings and amend any prior *pro se* filings." Counsel also noted that he was in the process of obtaining Warren's medical records. After asking for a 90-day continuance, Judge Hansen suggested that the parties schedule the next court date on a day the court holds "PC" cases. When Judge Hansen accidentally suggested a Monday date, an assistant state's attorney reiterated that "[i]t's a PC, Judge," which typically were scheduled for Fridays. The case was then continued.

¶ 11    On August 13, 2021, the next court date, Judge Chambers again presided, and he initially asked: "Is this a post conviction case?" Warren's counsel responded affirmatively. The court then asked: "Where is Mr. Hooper?" An assistant state's attorney replied that she was unsure and asked if Warren's counsel had filed a Rule 651(c) certificate. Warren's counsel remarked that he had not filed anything yet. A few moments later, Warren's counsel stated: "I ask to file my appearance for statutory dead line [*sic*] to be stayed." Judge Chambers responded that he would "grant that." The parties began to discuss scheduling, and Warren's counsel remarked that he would be serving subpoenas soon to obtain Warren's medical records. Judge Chambers and Warren's counsel agreed to a future status date, and, in response, the assistant state's attorney asked if that was a Friday. Judge Chambers noted that it was not and added: "Mr. Hooper is not on the case yet. When he does get on the case, we will move it to a Friday." In the Case Summary from that date, there is another notation that it was a "PC CASE," and in the Criminal Disposition Sheet, it notes "PC."

Thereafter, Judge Paul S. Pavlus replaced Judge Chambers on the case, and the case was continued multiple times. There are no reports of proceedings from those court dates.

¶ 12    On January 28, 2022, Warren, through private counsel, filed a "Motion to Vacate Plea of Guilty and/or Resentence Defendant." In the motion, he cited to Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2022)), which discusses the presentence investigation report, and both the United States and Illinois Constitutions. In the motion, Warren requested the court allow him to withdraw his guilty plea because he received ineffective assistance of counsel and his plea was entered as a result of undue pressure, specifically because of his mental health issues and the fact the jury had already been selected in his case. In the alternative, Warren argued that he should be resentenced because Judge Chambers did not order or consider a presentence investigation report before sentencing him, which allegedly violated section 5-3-1 of the Unified Code of Corrections. That day, the court also held a hearing, but there is no report of proceedings, and the case was continued.

¶ 13    Two months later, Warren filed an amended "Motion to Vacate Plea of Guilty and/or Resentence Defendant," which was nearly identical to the original motion, but also included an affidavit from Warren and a certificate from counsel under Rule 604(d). The day after Warren filed the amended motion, Judge Aleksandra Gillespie, presiding over the case, held a hearing and continued the matter. There is no report of proceedings, but in the Criminal Disposition Sheet from that court date, Judge Gillespie noted it was a "PC" and listed Warren's private counsel and Assistant State's Attorney Hooper. The Case Summary from that date also notes "PC CASE." Multiple court appearances subsequently occurred, but there are no reports of proceedings from them.

¶ 14    In August 2022, the State filed a response, in which it acknowledged that Warren had filed a *pro se* "Motion to Modify Sentence," but focused on responding to Warren's "Motion to Vacate Plea of Guilty and/or Resentence Defendant" filed through counsel. The State argued that Warren untimely filed his motion attacking his guilty plea and sentence, and the motion lacked merit where there was no evidence he was pressured into entering the blind guilty plea and there was an investigation report of Warren completed by the adult probation department of the circuit court. The State did not mention anything about a postconviction petition. In Warren's reply, he likewise did not mention anything about a postconviction petition and focused on the issues raised only in his "Motion to Vacate Plea of Guilty and/or Resentence Defendant."

¶ 15    The following month, during argument before Judge Pavlus, Warren's counsel initially remarked that, although he captioned his motion as a "Motion to Vacate Plea of Guilty and/or Resentence Defendant," he possibly should have captioned it "as a [section 2-]1401 [petition]." Judge Pavlus interjected and noted that, depending on the argument raised in such a petition, there were different time limitations. Nevertheless, counsel argued that the 30-day timeframe to file his motion to vacate never began because Judge Chambers never lawfully sentenced Warren given his failure to order and consider a presentence investigation report. Warren's counsel further argued about the merits of his motion to vacate, and an assistant state's attorney responded positing that the motion failed on the merits, but also failed because it was untimely. There was no discussion about a postconviction petition. Following the parties' argument, Judge Pavlus took the matter under advisement and scheduled a subsequent court date for a ruling.

¶ 16    On October 24, 2022, four days before the scheduled date for a ruling, Warren filed, through private counsel, a "[Section] 2-1401 Motion for Relief and Motion for Order of Presentence Investigation Report." Warren argued that Judge Chambers did not order or consider

a presence investigation report prior to sentencing him in violation of section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2022)). As a result, Warren requested the court vacate his sentence, order a presence investigation report and resentence him. The record does not contain a proof of service of the petition on the State.

¶ 17    Four days later, Judge Pavlus orally denied Warren's *pro se* "Motion to Modify Sentence" and his "Motion to Vacate Plea of Guilty and/or Resentence Defendant" filed through counsel because Warren filed them more than 30 days after being sentenced. Following the denial of Warren's motions, there was some confusion as to whether Warren had filed a section 2-1401 petition. Warren's counsel stated that he was "also seeking leave to file a petition under [section] 2-1401," but Judge Pavlus asserted that such a petition would also be untimely. Counsel then noted he had already filed the petition, resulting in Judge Pavlus orally denying the motion. Following Judge Pavlus' rulings, Warren's counsel stated that he intended to file a written motion to reconsider and requested a court date to present the motion. Warren's counsel also indicated that he wanted various medical records of Warren's to be included in the appellate record. An assistant state's attorney objected because the records had never been part of the record. Warren's counsel, however, noted that all the medical records had been tendered to the State, and he had an e-mail from Assistant State's Attorney Hooper confirming receipt. Judge Pavlus instructed the assistant state's attorney to talk with Assistant State's Attorney Hooper and noted that it "believe[d] because of the miscommunication and maybe misunderstanding, they believed initially it was a post-conviction matter, where it wasn't a post-conviction matter. It was a courtroom matter." The Case Summary from this date still indicated that the matter was a "PC CASE," and the Criminal Disposition Sheet simply notes the next court date and "Motion to reconsideration [*sic*]."

¶ 18    On November 26, 2022, Warren filed a motion to reconsider directed at the denial of his "Motion to Vacate Plea of Guilty and/or Resentence Defendant," arguing, in part, that the court's failure to order and consider a presentence investigation report prevented the 30-day period to challenge a guilty plea and sentence from commencing. Warren also filed a motion to reconsider the denial of his section 2-1401 petition, arguing that, because Judge Chambers had granted his motion to stay all statutory deadlines, the petition was timely.

¶ 19    Two weeks later, Judge Pavlus held a hearing, where Warren's counsel indicated he had filed two motions to reconsider and asked the court to schedule a date for argument. Judge Pavlus noted that he "reviewed your two motions that you filed on November 26th and both motions, the crux of the arguments in the motions is a statutory time limitation, and you made an argument about at one point Judge Chambers stayed any type of time limitations on any of these motions." The case was continued for argument.

¶ 20    On February 7, 2023, during argument on Warren's motions to reconsider, an assistant state's attorney asserted that she never received a copy of a section 2-1401 petition. Judge Pavlus observed that he did not "have a *per se* [section 2-]1401 petition" and could not recall any section 2-1401 petition being filed by Warren. Judge Pavlus stated: "I agree with the State. There's never been a [section 2-]1401 petition file with the Court." The assistant state's attorney remarked that, if one had been filed, another unit within the Cook County State's Attorney's Office would have handled it. Warren's counsel, however, remained adamant that he filed a section 2-1401 petition and that it was timely due to Judge Chambers staying any statutory deadlines. Regardless of the claimed service issue, the State argued that Judge Chambers could not stay the deadline to file a section 2-1401 petition. Despite orally denying Warren's section 2-1401 petition already, Judge Pavlus again orally denied the petition (rather than the motion to reconsider) as untimely and

rejected Warren's argument that Judge Chambers had the authority to stay the deadline to file a section 2-1401 petition. There is no evidence from the hearing that Judge Pavlus ruled on either of Warren's motions to reconsider. The court's Criminal Disposition Sheet and Case Summary only indicate that Judge Pavlus denied Warren's section 2-1401 petition.

¶ 21    On February 8, 2023, Warren filed his notice of appeal.

¶ 22                              II. ANALYSIS

¶ 23                    A. Warren's Rule 604(d) Motions

¶ 24    Before reaching the merits of Warren's contentions on appeal related to Judge Pavlus' denial of his Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024) motions, we must review our jurisdiction in the matter. Although neither party has raised an issue of appellate jurisdiction, we have a duty to *sua sponte* consider it. *People v. Blancas*, 2019 IL App (1st) 171127, ¶ 11. This jurisdictional issue involves the confluence of Illinois Supreme Court Rule 604(d) (eff. Apr. 15, 2024), which governs the process to challenge a guilty plea and sentence, and Illinois Supreme Court Rule 606 (eff. Apr. 15, 2024), which governs the perfection of an appeal in a criminal case.

¶ 25    We begin with Rule 604(d), which provides that: "No appeal from a judgment entered upon a plea of guilty shall be taken unless the defendant, within 30 days of the date on which sentence is imposed, files in the trial court a motion to reconsider the sentence, if only the sentence is being challenged, or, if the plea is being challenged, a motion to withdraw the plea of guilty and vacate the judgment." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024). This requirement helps ensure that trial courts are given the "opportunity to correct any potential errors in guilty pleas and sentences prior to appeal, while witnesses are available and memories are fresh." *People v. Walls*, 2022 IL 127965, ¶ 25. As the language suggests, a Rule 604(d) motion—whether challenging a guilty plea or the sentence—"is a condition precedent to an appeal from a judgment on a plea of guilty." *People v.*

*Flowers*, 208 Ill. 2d 291, 300-01 (2003). Rule 604(d) further states that, "[i]f the motion is denied, a notice of appeal from the judgment and sentence shall be filed within the time allowed in Rule 606, measured from the date of entry of the order denying the motion." Ill. S. Ct. R. 604(d) (eff. Apr. 15, 2024).

¶ 26   In turn, Rule 606(a) states that the only jurisdictional step required in perfecting an appeal is the timely filing of a notice of appeal. Ill. S. Ct. R. 606(a) (eff. Apr. 15, 2024); *Walls*, 2022 IL 127965, ¶ 26. Rule 606(b) provides that, "[e]xcept as provided in Rule 604(d) ***, the notice of appeal must be filed with the clerk of the circuit court within 30 days after the entry of the final judgment appealed from or if a motion directed against the judgment is timely filed, within 30 days after the entry of the order disposing of the motion." Ill. S. Ct. R. 606(b) (eff. Apr. 15, 2024). In interpreting Rule 606(b)'s cross-reference to Rule 604(d), our supreme court has concluded that, where a defendant files a Rule 604(d) motion challenging a guilty plea or the sentence therefrom, he has 30 days from the denial of that motion to file his notice of appeal. *Walls*, 2022 IL 127965, ¶ 26. The filing of a motion to reconsider the denial of a Rule 604(d) motion does not toll the time in which to file the notice of appeal. *Id.* There is a policy reason behind this interpretation. The imposition of a sentence in a criminal case is a final judgment. *People v. Abdullah*, 2019 IL 123492, ¶ 19. Thus, when a defendant files a Rule 604(d) motion, that motion is a postjudgment motion. *Walls*, 2022 IL 127965, ¶ 19. Allowing a motion to reconsider a postjudgment motion to toll the time to appeal would encourage repeated or successive postjudgment motions, and cause "unnecessary delay, redundancy, and potential confusion." *Id.* ¶ 25.

¶ 27   With the construction of Rule 604(d) and Rule 606 in mind, we turn back to the instant case. Judge Pavlus denied Warren's motions under Rule 604(d) on October 28, 2022, resulting in Warren having 30 days therefrom to file his notice of appeal. Instead of appealing within 30 days,

Warren filed a motion to reconsider Judge Pavlus' denial. But, as discussed, that motion to reconsider, as a repeated or successive postjudgment motion, did not toll the time Warren had to file his notice of appeal from the denial of his Rule 604(d) motions. See *Walls*, 2022 IL 127965, ¶ 26. And therefore, when Warren filed his notice of appeal on February 8, 2023, that notice was untimely. See *id.*

¶ 28    Nevertheless, Warren argues that Judge Chambers recharacterized his *pro se* "Motion to Modify Sentence" as a postconviction petition, which rendered the filing timely under the Post-Conviction Hearing Act (Act). See 725 ILCS 5/122-1(c) (West 2018) ("If a defendant does not file a direct appeal, the post-conviction petition shall be filed no later than 3 years from the date of conviction, unless the petitioner alleges facts showing that the delay was not due to his or her culpable negligence."). " '[R]echaracterization' " is "the process whereby a trial court independently evaluates a pleading filed by a *pro se* defendant and, if the pleading alleges a deprivation of rights cognizable in a postconviction proceeding, treats 'the pleading as a postconviction petition, even where the pleading is labeled differently.' " *People v. Stoffel*, 239 Ill. 2d 314, 323 (2010) (quoting *People v. Shellstrom,* 216 Ill. 2d 45, 52-53 (2005)).

¶ 29    In Warren's *pro se* "Motion to Modify Sentence," while much of the pleading concerned his claim that he was fully rehabilitated and merely wanted to tell the court his side of the story for a reduced sentence, he also raised concerns about his guilty plea process due to trial counsel's representation of him even though he explicitly asserted he was not making the allegations "in order to plead not guilty." These allegations were certainly cognizable under the Act (725 ILCS 5/122-1 *et seq.* (West 2018)). See *People v. Hall*, 217 Ill. 2d 324, 334 (2005). Because Warren's allegations were cognizable under the Act, Judge Chambers could, but was not required to,

recharacterize Warren's *pro se* pleading into a postconviction petition. See *Shellstrom*, 216 Ill. 2d at 53 n.1.

¶ 30    While Judge Chambers, the State and Warren counsel's use of the word "postconviction" throughout the proceedings does not automatically mean they were referring to a petition under the Act (see *People v. Thompson*, 377 Ill. App. 3d 945, 947 (2007)), the evidence that Judge Chambers recharacterized Warren's *pro se* filing as a postconviction petition under the Act is too strong to disregard. First, more than 90 days after Warren's *pro se* filing had been docketed, Judge Chambers appointed counsel for Warren, a strong indication that Judge Chambers treated Warren's *pro se* filing as a postconviction petition and advanced it to the second stage under the Act. See 725 ILCS 5/122-4 (West 2018) (providing for the appointment of counsel at the second stage of the Act). While there is no express notation in the record from Judge Chambers (though we do not have a report of proceedings from the February 2020 hearing where he appointed counsel for Warren) advancing Warren's petition, Judge Chambers did so by implication under the circumstances. See *People v. Johnson*, 2018 IL App (5th) 140486, ¶ 45 (remarking that, "[b]y appointing counsel under these circumstances, the court took affirmative steps that in effect advanced the petition to the second stage of postconviction proceedings" despite no express statement of such action). Second, while Judge Chambers presided over the case, the record is replete with assertions from him, the State, the appointed assistant public defender (who later withdrew) and Warren's private counsel that Warren's *pro se* filing was being treated as a postconviction petition. Third, there were multiple references to an Illinois Supreme Court Rule 651(c) (eff. July 1, 2017) certificate, a rule which only pertains to postconviction proceedings. See *Stoffel*, 239 Ill. 2d at 327. Although Judge Chambers never provided Warren with recharacterization admonishments discussed in *Shellstrom*, 216 Ill. 2d at 57, Judge Chambers did

not need to under the circumstances because he advanced the petition to the second stage and Warren had the representation of counsel. See *Stoffel*, 239 Ill. 2d at 328.

¶ 31    Judge Chambers' actions in the present case are similar to those taken by the trial court in *Stoffel*. There, the defendant filed a *pro se* section 2-1401 petition that raised a claim cognizable by the Act, and the court appointed counsel for him. *Id.* at 317. During subsequent court proceedings, there were multiple judges handling the defendant's case, and, at various times, defense counsel referred to the case involving a postconviction petition. *Id.* at 317-18. Additionally, during one court appearance at which defense counsel did not appear, the court ordered counsel to file a Rule 651(c) certificate. *Id.* at 318-19. Although the State never explicitly agreed with the defendant's *pro se* filing being treated as a postconviction petition, the State did not raise any challenges to defense counsel's characterization until much later in the proceedings despite the State filing a motion to dismiss and deeming the defendant's *pro se* filing as one under section 2-1401. *Id.* at 317-320. The State's first true objection occurred when the defendant tried to file a supplemental postconviction petition, and the State moved to strike it because he had never filed an initial postconviction petition. *Id.* at 319-320. At this point, a new judge presided over the case, and the court granted the State's motion to dismiss, as if the defendant's *pro se* filing was a section 2-1401 petition. *Id.* at 321.

¶ 32    The case reached our supreme court, where it disagreed with the circuit court's dismissal. The supreme court stated:

"There is no dispute that the body of defendant's *pro se* petition alleged a constitutional violation which was cognizable as a postconviction claim and there is no dispute that Rule 651(c) pertains solely to postconviction counsel appointed pursuant to the Act. *** It is evident, therefore, that although defendant's pleading

did not explicitly reference the Act, the pleading was deemed a postconviction petition, it survived summary dismissal, and it was advanced to the second stage of review where counsel was appointed." *Id.* at 327.

¶ 33    Under comparable circumstances, we find, like our supreme court in *Stoffel*, that Judge Chambers recharacterized Warren's *pro se* "Motion to Modify Sentence" into a postconviction petition under the Act that survived summary dismissal and advanced to second-stage proceedings where counsel was appointed.

¶ 34    Once a court recharacterizes a *pro se* filing as a postconviction petition, it may be un-recharacterized. In *Stoffel*, despite one judge recharacterizing the defendant's *pro se* section 2-1401 petition into a postconviction petition, another judge granted the State's motion to dismiss, as if the pleading was a section 2-1401 petition. *Id.* at 321. In doing so, our supreme court noted that, while the court had already recharacterized the defendant's *pro se* filing as a postconviction petition, "it is possible that even after a pleading has been deemed a postconviction petition, further investigation by counsel will reveal that the substantive claims in the petition would be more appropriately addressed in another procedural vehicle." *Id.* at 329. But because "[n]o argument ha[d] been made that such a situation exist[ed]" in the case, our supreme court affirmed part of the appellate court's judgment which had reversed the dismissal entered by the circuit court because the circuit "court failed to offer any reasonable basis for treating the pleading as a section 2-1401 petition after the pleading had *already* been 'recharacterized' as a postconviction petition and survived summary dismissal." (Emphasis in original.) *Id.*

¶ 35    Under *Stoffel*, even though Judge Chambers recharacterized Warren's *pro se* "Motion to Modify Sentence" as a postconviction petition that survived summary dismissal and advanced to second-stage postconviction proceedings, the petition could be un-recharacterized. See *id.*; *People*

*v. McArthur*, 2019 IL App (3d) 170359-U, ¶¶ 24-25 (observing that the circuit court had "recharacterized the defendant's section 2-1401 petition into a postconviction petition that had advanced to the second stage," but noting that "nothing in *Stoffel* would render the circuit court unable to unrecharacterize a petition \*\*\*"). And here, Judge Pavlus un-recharacterized Warren's *pro se* filing from a postconviction petition back to a Rule 604(d) motion and had a reasonable basis to do so. We acknowledge the only comments in the record from Judge Pavlus involving un-recharacterization occurred when he stated that Warren's *pro se* filing was initially considered "a post-conviction matter, where it wasn't a post-conviction matter. It was a courtroom matter." Judge Pavlus added that he believed this was the result of a "miscommunication and maybe misunderstanding." But based on the actions of Warren's counsel following Judge Chambers' recharacterization, it is clear Warren's counsel abandoned pursuing Warren's *pro se* filing as a postconviction petition, giving Judge Pavlus a reasonable basis to un-recharacterize it.

¶ 36 Despite the discussion on the record about a Rule 651(c) certificate, including from Warren's counsel, no certificate was ever filed. Furthermore, during an April 2021 status hearing, after Warren's counsel noted the case was a postconviction matter, counsel requested a continuance from Judge Hansen so that he could "make my filings and amend any prior *pro se* filings at that time." But instead of filing an amended postconviction petition or supplemental petition, counsel filed a "Motion to Vacate Plea of Guilty and/or Resentence Defendant" citing primarily to Rule 604(d) and section 5-3-1 of the Unified Code of Corrections (730 ILCS 5/5-3-1 (West 2022)), which he later amended to include a Rule 604(d) certificate, and a section 2-1401 petition. By proceeding in this manner, counsel implicitly determined that "the substantive claims in the petition would be more appropriately addressed in another procedural vehicle." *Stoffel*, 239 Ill. 2d at 329.

¶ 37    Moreover, when Judge Pavlus made the remarks indicating that he had un-recharacterized Warren's *pro se* filing from a postconviction petition, Warren's counsel did not object, thereby forfeiting any claim that Judge Pavlus' un-recharacterization was improper or unwanted by Warren. See *People v. Robinson*, 2024 IL App (5th) 231099, ¶ 20. The forfeiture rule prevents litigants "from sitting idly by and knowingly allowing an irregular proceeding to go forward only to seek reversal due to the error when the outcome of the proceeding is not favorable." *People v. Jackson*, 2022 IL 127256, ¶ 15. If counsel believed that Warren's *pro se* filing should have continued to be treated as a postconviction petition, the time to raise the issue was following Judge Pavlus' remarks. While the Case Summary from this court date indicates that the matter was still a "PC CASE"—though this is the last reference in the Case Summary to the filing being a postconviction petition—nothing about counsel's actions following Judge Chambers' recharacterization of Warren's *pro se* filing were consistent with counsel's continued desire to have that filing treated as a postconviction petition. Counsel's conduct, in turn, gave Judge Pavlus a reasonable basis to un-recharacterize the filing back to a motion filed pursuant to Rule 604(d).

¶ 38    Because Judge Pavlus un-recharacterized Warren's *pro se* filing from a postconviction petition back to a Rule 604(d) motion and Warren did not timely appeal Judge Pavlus's denial of either his *pro se* "Motion to Modify Sentence" or his "Motion to Vacate Plea of Guilty and/or Resentence Defendant" through counsel, both filed pursuant to Rule 604(d), we lack jurisdiction to review the denial of Warren's Rule 604(d) motions. See *Walls*, 2022 IL 127965, ¶ 26.

¶ 39    As a final note, because Judge Pavlus un-recharacterized Warren's *pro se* filing from a postconviction petition back to a Rule 604(d) motion, that rendered Warren's postconviction petition null and void. As a result, if Warren seeks to file a postconviction petition in the future, such a petition must be considered an initial petition rather than a successive petition. In light of

the fact that Warren's pleading was un-recharacterized by Judge Pavlus as a postconviction petition more than three years after Warren pled guilty, his failure to file such a petition within those three years would not be due to his culpable negligence. See 725 ILCS 5/122-1(c) (West 2022).

¶ 40                                        B. Section 2-1401 Petition

¶ 41    We now turn to Judge Pavlus' denial of Warren's section 2-1401 petition, which he did because Warren did not timely file the petition. Warren, however, argues that he did timely file the petition because Judge Chambers stayed all statutory deadlines in his case, which encompassed a potential section 2-1401 petition. As a technical matter, we note that, although Judge Pavlus "denied" Warren's section 2-1401 petition, he should have "dismissed" the petition because of its untimeliness. See *People v. Matthews*, 2016 IL 118114, ¶¶ 7-9, 23.

¶ 42    At the outset, we must discuss the confusion that occurred beginning on October 24, 2022, when Warren filed his section 2-1401 petition, albeit without serving the State. Four days later, upon learning that Warren had filed a section 2-1401 petition, Judge Pavlus orally denied the petition, though no denial was ever entered into the court's record book. Less than a month later, Warren filed two motions to reconsider, and pertinent here, is the motion to reconsider the denial of his section 2-1401 petition. At a subsequent status hearing, Judge Pavlus acknowledged both motions to reconsider and set a date for argument. But then, during argument on February 7, 2023, the State remarked that it had never received a copy of the petition and Judge Pavlus indicated that such a petition was never filed. Warren's counsel, however, was adamant he filed one, resulting in Judge Pavlus orally denying the petition again. This time, that denial was documented in court's record. The next day, Warren filed his notice of appeal. Based on the proceedings, it is clear that, on February 7, 2023, Judge Pavlus orally denied Warren's section 2-1401 a second time rather

than ruled on Warren's motion to reconsider, leaving the motion to reconsider potentially pending and unresolved, which could present another jurisdictional issue.

¶ 43    Proceedings under section 2-1401 of the Code of Civil Procedure (Code) (735 ILCS 5/2-1401 (West 2022)) are civil in nature, even if the case's subject matter is criminal. *People v. Vincent*, 226 Ill. 2d 1, 8 (2007). As such, the civil rules governing appeals apply to section 2-1401 petitions. See *People v. Tapp*, 2012 IL App (4th) 100664, ¶ 4. Under Illinois Supreme Court Rule 303(a)(2) (eff. July 1, 2017), "[w]hen a timely postjudgment motion has been filed by any party, whether in a jury case or a nonjury case, a notice of appeal filed before the entry of the order disposing of the last pending postjudgment motion *** becomes effective when the order disposing of said motion or claim is entered." Until the disposition of the last pending postjudgment motion, a notice of appeal is premature and ineffective. See *Chand v. Schlimme*, 138 Ill. 2d 469, 479 (1990). A motion to reconsider the denial of a section 2-1401 petition is considered a postjudgment motion for purposes of Rule 303. *Harris Bank, N.A. v. Harris*, 2015 IL App (1st) 133017, ¶¶ 44-46. As such, under Rule 303(a)(2), if Warren's motion to reconsider the denial of his section 2-1401 petition remained pending and unresolved, his notice of appeal would have been premature and ineffective.

¶ 44    However, Warren's motion to reconsider was itself premature and rendered a nullity. This is because while Judge Pavlus orally denied Warren's section 2-1401 petition twice, only one of those denials had the effect of a final judgment. Under Illinois Supreme Court Rule 272 (eff. Jan. 1, 2018), which applies here (see *Vincent*, 226 Ill. 2d at 8):

> "If at the time of announcing final judgment the judge requires the submission of a
>
> form of written judgment to be signed by the judge or if a circuit court rule requires
>
> the prevailing party to submit a draft order, the clerk shall make a notation to that

effect and the judgment becomes final only when the signed judgment is filed. If no such signed written judgment is to be filed, the judge or clerk shall forthwith make a notation of judgment and enter the judgment of record promptly, and the judgment is entered at the time it is entered of record. \*\*\*".

In construing Rule 272, our supreme court has stated "an oral pronouncement of judgment was not considered entered when rendered, but rather was considered entered when the oral judgment was entered of record." *Williams v. BNSF R. Co.*, 2015 IL 117444, ¶ 41. "[E]ntered of record" for purposes of Rule 272 means in the court's law record book. *Id.* ¶¶ 42, 45.

¶ 45    Under Rule 272, when Judge Pavlus orally denied Warren's section 2-1401 petition on October 28, 2022, but that ruling was never entered of record, the denial never became final. See *Ahn Brothers v. Buttitta*, 143 Ill. App. 3d 688, 690 (1986) ("[U]nder Rule 272, when an oral pronouncement of judgment occurs, the judgment becomes final at the time it is entered of record."). And because Judge Pavlus' denial never became final, it could not be attacked by motion. See *Archer Daniels Midland Co. v. Barth*, 103 Ill. 2d 536, 538-39 (1984). This, is turn, meant that Warren's motion to reconsider was premature (see *id.*) and therefore, a nullity. See *In re Marriage of Porter*, 229 Ill. App. 3d 697, 705 (1992) (finding that, where a motion to reconsider was filed before the judgment was entered, it "was a nullity"). As such, when Judge Pavlus orally denied Warren's section 2-1401 petition for a second time on February 7, 2023, but this time that denial was entered of record, that denial was the final judgment on Warren's section 2-1401 petition. With his motion to reconsider being a nullity, it was therefore not unresolved or pending when Warren filed his notice of appeal the following day. Consequently, Rule 303(a)(2) does not present a jurisdictional issue in this case.

¶ 46    We now turn to section 2-1401 of the Code (735 ILCS 5/2-1401 (West 2022)), which permits a party to seek relief from a final judgment or order in a criminal or civil case more than 30 days after its entry through filing a petition. *People v. Thompson*, 2015 IL 118151, ¶ 28. As a general matter, a section 2-1401 petition must be filed no more than two years following the entry of the challenged judgment or order. 735 ILCS 5/2-1401(c) (West 2022). The filing of a section 2-1401 petition is not a continuation of the prior proceeding, but rather begins a new proceeding. 735 ILCS 5/2-1401(b) (West 2022); *Sarkissian v. Chicago Board of Education*, 201 Ill. 2d 95, 102 (2002). "Section 2-1401 petitions are essentially complaints inviting responsive pleadings," and they can be challenged through motions to dismiss. *Vincent*, 226 Ill. 2d at 8. When a party files a section 2-1401 petition, he must provide notice to the opposing party that the petition has been filed. 735 ILCS 5/2-1401(b) (West 2022); Ill. S. Ct. R. 105 (eff. Jan. 1, 2018); Ill. S. Ct. R. 106 (eff. Aug. 1, 1985). The notice requirement ensures that the opposing party has an opportunity to appear and defend itself. *Matthews*, 2016 IL 118114, ¶ 15.

¶ 47    Once the petitioner provides the requisite notice, the opposing party has 30 days to respond to the petition. *People v. Laugharn*, 233 Ill. 2d 318, 323 (2009). If the opposing party does not respond within 30 days, that constitutes an admission of all well-pled facts in the petition and renders it ripe for adjudication. *Vincent*, 226 Ill. 2d at 9-10. Although the court can dismiss a petition for being deficient as a matter of law despite the opposing party not filing a responsive pleading (*id.* at 8-9, 12), the court cannot do so *sua sponte* before the 30-day period to file a response has expired. *Laugharn*, 233 Ill. 2d at 323. The only exceptions to this waiting period are if the opposing party files a responsive pleading earlier than 30 days "or an express indication on the record of the [opposing party's] intent to waive the time allotted for a response and consent to the court's early decision on the merits—silence will not suffice." *People v. Dalton*, 2017 IL App

(3d) 150213, ¶ 35. Additionally, because the two-year period to file a section 2-1401 petition is an affirmative defense that a responding party may forfeit by failing to raise or waive, the court cannot *sua sponte* dismiss a petition based on it being untimely. *People v. Cathey*, 2019 IL App (1st) 153118, ¶ 18. We review the circuit court's dismissal of a section 2-1401 petition without an evidentiary hearing *de novo*. *Matthews*, 2016 IL 118114, ¶ 9.

¶ 48    Before addressing the merits of Warren's contention concerning the alleged timeliness of his section 2-1401 petition, we note a couple other procedural issues with Warren's section 2-1401 petition and how it was resolved. First, there is no evidence Warren served his petition on the State, as required. See 735 ILCS 5/2-1401(b) (West 2022) ("All parties to the petition shall be notified as provided by rule."). In the absence of being properly served with the petition under Illinois Supreme Court Rules 105 (eff. Jan. 1, 2018) and 106 (eff. Aug. 1, 1985), the State can be provided with actual notice, which can occur through its presence in court. See *People v. Ocon*, 2014 IL App (1st) 120912, ¶ 35. However, neither party raises a service issue in this court, resulting in any claim of error related to it being forfeited. See Ill. S. Ct. R. 341(h)(7), (i) (Oct. 1, 2020). Moreover, a party cannot use his own failure to properly serve a section 2-1401 petition on the opposing party as a basis to argue for reversal of the denial of a section 2-1401 petition. See *Matthews*, 2016 IL 118114, ¶ 15. Additionally, it is arguable that the court improperly denied Warren's petition based on timeliness grounds *sua sponte*, as the State never moved to dismiss, either orally or in writing, Warren's petition, which we acknowledge was, in part, due to the lack of service. See *Cathey*, 2019 IL App (1st) 153118, ¶ 18. However, Warren does not raise this issue as a basis for reversal, resulting in any claim of error related to it being forfeited. See Ill. S. Ct. R. 341(h)(7) (Oct. 1, 2020). We further note that "Illinois law is well settled that other than for assessing subject matter jurisdiction, 'a reviewing court should not normally search the record for unargued and unbriefed

reasons to *reverse* a trial court judgment.' " (Emphasis in original.) *People v. Givens*, 237 Ill. 2d 311, 323 (2010) (quoting *Saldana v. Wirtz Cartage Co.*, 74 Ill. 2d 379, 386 (1978)). In other words, to the extent the aforementioned issues or others potentially in the court's resolution of Warren's section 2-1401 petition would serve as a basis to reverse, we cannot raise them ourselves and use them as a basis to reverse the court's denial of Warren's section 2-1401 petition. See *id.*

¶ 49     With those procedural issues out of the way, we turn to Warren's contention that his section 2-1401 petition, filed well over three years after he was sentenced, was timely. As noted, as a general matter, a section 2-1401 petition must be filed within two years of the challenged judgment or order. 735 ILCS 5/2-1401(c) (West 2022). The purpose of section 2-1401's "time limitation is a salutary one—to establish necessary stability and finality in judicial proceedings." *Crowell v. Bilandic*, 81 Ill. 2d 422, 427-28 (1980). The two recognized exceptions, beyond tolling for legal disability, duress or fraudulent concealment (see 735 ILCS 5/2-1401(c) (West 2022)), are where the challenged judgment or order is allegedly void or where the opposing party "waive[s]" the limitations period. *Thompson*, 2015 IL 118151, ¶ 29. Beyond those exceptions, the two-year time limitation must be strictly construed. See *City of Rockford v. Gilles*, 2022 IL App (2d) 210521, ¶¶ 58-62.

¶ 50     Warren does not argue that the alleged sentencing error in this case rendered his sentence void. See *People v. Castleberry*, 2015 IL 116916, ¶ 1 (abolishing the void-sentencing rule). Warren also does not argue that the State forfeited or waived the time limitation. Rather, he posits that Judge Chambers stayed the statutory deadline to file his section 2-1401 petition. However, our case law demonstrates that a court has no authority to extend or stay the deadline to file a section 2-1401 petition. See *Gilles*, 2022 IL App (2d) 210521, ¶ 69 (asserting that "[r]egardless of the underlying circumstances, we may not extend section 2-1401's limitations period by judicial fiat")

(Internal quotation marks omitted.); *Selvy v. Beigel*, 309 Ill. App. 3d 768, 777 (1999) (rejecting a party's argument that, "even if the technical requirements for tolling were not met, the court had discretion to extend the limitation in the interests of justice" because courts cannot "extend the statutory limitation by judicial fiat"); *Sidwell v. Sidwell*, 127 Ill. App. 3d 169, 173 (1984) (observing that the limitations period in section 2-1401 "has been strictly construed by the courts and we cannot, even if the circumstances were believed to warrant it, extend this limitation by judicial fiat").

¶ 51     There is simply no authority, and indeed Warren cites none, that a court can extend or stay the two-year deadline to file a section 2-1401 petition. We acknowledge that, upon the request from Warren's counsel to "stay[ ] any deadlines" to allow him to investigate the case, Judge Chambers obliged. But, at this point, counsel had not yet raised the possibility of filing a section 2-1401 petition, and we cannot conclude from this record that Judge Chambers intended to give Warren additional time to file such a petition given the lack of a concomitant discussion of such a petition. See *In re Jonathon C.B.*, 2011 IL 107750, ¶ 72 (reviewing courts presume the circuit court knows and follows the law unless the circumstances affirmatively indicate otherwise). But when Judge Chambers granted the "stay," he had just remarked that Warren's *pro se* filing appeared to be a postconviction petition. Under section 122-5 of the Act (725 ILCS 5/122-5 (West 2018)), "[t]he court may in its discretion make such order as to *** extending the time of filing any pleading other than the original petition, as shall be appropriate, just and reasonable and as is generally provided in civil cases." Judge Chambers "stay" was likely him exercising his discretion under this section to provide Warren's counsel time to file an amended or supplemental petition.

¶ 52     Still, Warren cites to *People v. Hill*, 2018 IL App (1st) 161648-U and argues that the section 2-1401 filing deadline is not jurisdictional, which therefore allowed Judge Chambers to stay the

deadline. Initially, we note that litigants may not cite to Rule 23 orders filed before January 1, 2021. See Ill. S. Ct. R. 23(e)(1) (eff. Feb. 1, 2023). Regardless, *Hill* is not persuasive authority. There, the defendant filed a section 2-1401 petition more than two years following the challenged judgment. *Id.* ¶¶ 3-4. There is no evidence from the decision that the State raised timeliness as a defense. *Id.* ¶ 4. As such, when the appellate court noted that the two-year limitations period for a section 2-1401 petition was "not a jurisdictional issue," it was because the opposing party could forfeit or waive the limitations period as a defense. *Id.* ¶ 10. As noted, Warren does not argue that the State forfeited or waived the limitations period as a defense in his case, and therefore, *Hill* does not help him. Consequently, Judge Pavlus correctly determined that Warren's section 2-1401 petition was untimely.

¶ 53                                    III. CONCLUSION

¶ 54    For the foregoing reasons, we lack jurisdiction to review the circuit court of Cook County's denial of Warren's Rule 604(d) motions and affirm its judgment denying his section 2-1401 petition.

¶ 55    Affirmed.